## Chicago & Joliet Electric Railway Company v. Nancy J. Patton.

### Gen. No. 4,537.

1. PREPONDERANCE OF EVIDENCE—*not determined by greater number of witnesses.* The preponderance of the evidence does not necessarily lie with the side upon which the greater number of witnesses testify.

2. VERDICT—*when not disturbed.* A verdict will not be disturbed as contrary to the evidence where such evidence is conflicting, even if the verdict may seem contrary to the weight of the proof, unless it is clearly and palpably so.

Chicago & Joliet Electric Ry. Co. v. Patton.

3.. VERDICT—*when not excessive.* A verdict for $6,000 is not excessive where the evidence tends to show that the plaintiff was at the time of the injury about forty-nine years of age and of good health and sustained by reason thereof a fracture of the hip, with the consequent suffering and disability, which injury was permanent.

4. EVIDENCE—*what not the statement of a conclusion.* For the plaintiff to say, " I have been a nervous wreck ever since," is not to state a conclusion but a fact.

5. ARGUMENT OF COUNSEL—*when not improper.* It is not improper for counsel in his argument to the jury to state that damages are to be assessed for the future as well as for the past, where there is evidence tending to show a continuing injury.

6. ARGUMENT OF COUNSEL—*when cannot be complained of.* An argument of counsel cannot be complained of where no ruling is sought or obtained thereon in the trial court.

Action on the case for personal injuries. Appeal from the Circuit Court of Will County; the Hon. DORRANCE DIBELL, Judge, presiding. Heard in this court at the April term, 1905. Affirmed. Opinion filed August 1, 1905.

E. MEERS, for appellant.

J. W. D'ARCY, for appellee.

MR. JUSTICE FARMER delivered the opinion of the court.

Appellee was injured May 1, 1902, at 8:30 P. M. in alighting from one of appellant's cars, and this suit was brought to recover damages she claimed to have sustained thereby. The first count of the declaration alleges appellant stopped its car on Chicago street about 100 feet south of Clinton street to allow passengers to alight, and that as appellee was in the act of leaving the car while it was not in motion, it suddenly and violently started and thereby threw her upon the pavement and injured her. The second count charges the car was not stopped a sufficient length of time to allow passengers to alight therefrom, and that as appellee was in the act of leaving it, the car was suddenly and violently started and thereby threw her against the step of the car and to the surface of the street with great force and violence, seriously injuring her. Two trials of the case resulted in the juries failing to agree. At the third trial there was a verdict in favor of appellee for $6,000,

upon which the court, after overruling a motion for a new trial, rendered judgment and defendant below has appealed.

Appellant contends that under the evidence, appellee was not entitled to a verdict, that the court permitted improper testimony, that in the argument of appellee's counsel to the jury he indulged in improper remarks of a character that tended to excite prejudice against appellant, and that the verdict is excessive. Appellant's counsel in his brief says : " The most important questions to be considered in the case are, whether or not, from the direct testimony taken in connection with all the circumstances connected with the accident, appellee is entitled to recover a verdict for any amount; and was the jury influenced by sympathy, passion or prejudice in returning such a large verdict in her favor." Appellee was intending to transfer from the car she alighted from to another car, and she claims the car she was on stopped when it arrived at about the place for passengers desiring to transfer to depart from it. It was an open summer car with seats running crosswise and a foot-board running the entire length of the car on each side. Appellee claims when the car stopped she stepped on this foot-board with one foot and was in the act of stepping to the street with the other when the car suddenly and violently started, loosening her hold from the handle-bar and throwing her to the street. Appellant contends she attempted to alight from the car while it was in motion, and when she stepped from the foot-board to the street, was thrown on account of the motion of the car. The most serious question we find in the case is as to where the weight and preponderance of the testimony is. The evidence is not voluminous and we have read it with much care. It is conflicting; in some respects, irreconcilably so. Appellee, her adopted daughter, who was with her at the time of the accident, and a Mr. McCarthy and a Mr. Robertson testified the car stopped, then started up suddenly and stopped again. The conductor, the motorman, an inspector of appellant, who says he was riding on the front

platform with the motorman, and Mr. Brennan and his wife, who were passengers, testified appellee stepped from the car to the street while it was in motion and that it only stopped once, and that after she had fallen. Another passenger, a lady, testified that her recollection was that the car only made one stop. While the greater number testifying on this subject is on the side of appellant, still this is not of itself conclusive of the weight and preponderance of the evidence. Those who corroborated the testimony of appellee besides her little daughter were a Mr. McCarthy, who at the time of the accident was in the employ of appellant but was since discharged. He testified he was motorman of a car on the line to which appellant desired to transfer and was some thirty or forty yards from the car she alighted from. Also Mr. Robertson, a passenger who testified he was standing on the foot-board, holding to the hand-rail when the car started up after stopping, and that the sudden start swung him back against the side, and that just as this occurred he heard some one cry out and saw appellee lying on the pavement. Brereton, the motorman, Elliott, the conductor, and Cline, an inspector for appellant, all say the car made but one stop, and that appellee stepped from it before it had come to a stop. Thomas Brennan and his wife Margaret, who were passengers on the car, testified it slowed up and that appellee stepped from it to the street before it had stopped.

The law is so well settled that an appellate tribunal is not justified in reversing a judgment because the evidence is conflicting, even if it may seem contrary to the weight of the proof, unless it is clearly and palpably so, as hardly to require the citation of authorities. Much importance is justly and properly attached to the verdict of a jury and its approval by the trial court, because the opportunities of the trial court and jury for determining the weight and credit that should be given to the testimony of the witnesses is so much better than those of an appellate court. Our system of jurisprudence has demonstrated the value and usefulness of trial by jury in determining questions

of fact and human motive, and if appellate tribunals should reverse judgments in all cases where, from reading the record it would seem from the number of witnesses testifying on one side that the verdict and judgment were not supported by the weight of the testimony, ignoring the ability and propriety of the jury who saw and heard the witnesses to determine from their appearance and conduct on the witness stand and the manner of their testifying, what weight and credit their testimony is entitled to, it would be a serious interference with the right of trial by jury. It is true the plaintiff should always make his case by a preponderance of the evidence, but whether he has done so is the province of the jury to determine. The law has vested in the trial court the right and power to approve or set aside verdicts. It has also vested in courts of appellate jurisdiction the right and power to review and consider the evidence upon which the verdict is based, and to reverse a judgment rendered thereon if it clearly appears such verdict and judgment are unsupported by the weight of the evidence or that the verdict was the result of passion or prejudice. This power of appellate courts is a wholesome one and there should be no hesitation in its exercise in proper cases. It should be remembered, however, that in most contested law suits, the exact truth is not capable of absolute demonstration, but can only be approximated from the best information obtainable. The weaknesses and frailties of human nature are such that injustice may occasionally be done where justice is honestly and sincerely intended, but this is of such rare occurrence that it is better it should be so than that the truth of facts found by the verdict of a jury should be required to be so clear as to leave no room for question or dispute, before it could receive the approval of the court. The Supreme Court said in I. C. R. R. Co. v. Gillis, 68 Ill. 317, when that court reviewed the facts: "If any rule of this court can be so well established as to be neither questioned nor require the citation of authorities to support it, it is that a verdict will not be set aside whenever there is a contrariety of evidence, and

the facts and circumstances, by a fair and reasonable intendment, will authorize the verdict, notwithstanding it may appear to be against the strength and weight of the testimony." In West Chicago St. Ry. Co. v. Brown, 112 Ill. App. 351, plaintiff sought to recover for an injury caused, as she alleged, by a car suddenly starting while she was in the act of boarding it. She testified it stopped in response to her signal before she attempted to enter it, and four employees of the defendant testified it did not. A large number of witnesses testified the place where plaintiff said the car stopped was not the usual place for cars to stop. The judgment in favor of plaintiff was affirmed by the Appellate Court for the First District, and in the opinion the court said : "The question, of course, is not what the court would have found upon the same state of proof, but whether the verdict is so clearly against the evidence as the result of passion, prejudice or other improper influence upon the jury as to require the granting of a new trial."

Chicago Union Traction Co. v. O'Donnell, 113 Ill. App. 259, was a suit to recover for a death alleged to have been caused by the defendant's negligence. Three witnesses testified who saw the accident, one for plaintiff and two for defendant, and on appeal it was argued the verdict and judgment for plaintiff were contrary to the weight of the proof. On that branch of the case the court said : " In such case the question is one not merely of numbers, but of credibility, and it was clearly within the province of the jury to determine which was the more credible—the testimony of the one witness for appellee, or of the two for appellant. In North Chicago St. Ry. Co. v. Fitzgibbons, 79 Ill. App. 632, the witnesses for the plaintiff were four and those for the defendant nine. The jury found for the plaintiff, and we overruled the contention that the preponderance of the evidence was with the defendant, saying : " If we were to be guided only by the number of witnesses, it would be a simple matter to conclude that nine preponderated in numbers over four. But the jury might, with propriety, have based their measurement upon

other considerations as well as that of mere numbers—as, upon apparent truthfulness, lack of interest, opportunity for observing, intelligence, etc." See, also, Chicago City Ry. Co. v. Bundy, 210 Ill. 39.

This case presents a very good illustration of the difficulty of arriving at the exact truth from the testimony of witnesses. In addition to the contradictions in the evidence to which we have referred, appellee testified that Mr. Robertson and a lady she did not know lifted her up and assisted her to the sidewalk, and that Mr. Cline and Mrs. Brennan did not assist her. Mr. Robertson testified also that he and a lady unknown to him assisted her, and that Mr. Cline did not. Mr. Cline testified he got off the front platform of the car and helped appellee up and assisted her, with the help of a lady he did not know, to the sidewalk. Mrs. Brennan testified she and a man who got off the front part of the car helped appellee up and assisted her to the sidewalk. The conductor, motorman and Mr. Brennan testified Mr. Cline assisted appellee. It was possible for some of those who testified on this subject to have been honestly mistaken, but as to some of them, they must have known whether what they testified to was true or false, and could not well have been mistaken. Here again numbers were on the side of appellant, but there were circumstances in connection with the testimony of each of these witnesses proper to be considered by the jury in determining the weight that ought to attach to their evidence. It is very earnestly insisted the testimony of the witness Robertson is subject to suspicion, for the reason that although residing in the city of Joliet, he was not present and did not testify at the first two trials of the case. The attention of the jury and the trial court was called to that fact during the examination of the witness. He occupied and had for sometime a responsible position at the stove works in the city of Joliet, and was in no wise related by blood or marriage to appellee, and so far as disclosed from the testimony was wholly disinterested. The explanation he gave of how he came to be called as a witness at the

third trial and not at the first two, was not unreasonable, and we cannot say the jury was not warranted in believing him to be an honest and truthful witness. It is also insisted the weight and value which ought to have been given the testimony of appellee and her daughter was seriously impaired by the testimony of the official court reporter, that their evidence at the last trial as to certain passengers leaving the car before appellee did, was in conflict with their testimony on the same subject at the first two trials. We have carefully examined the testimony in this respect, and while there are some discrepancies in the stories told by them at the different trials, we are unable to say they were such contradictions as that they should be held seriously to weaken the testimony of the witnesses.

Appellee was asked while on the witness stand, by her counsel, what had been her condition of health after the accident and replied, "I have been a nervous wreck ever since." Appellant's counsel moved to strike out the answer as incompetent, but the motion was overruled and it is insisted this was prejudicial error. We are of opinion this answer was the statement of a fact and not a conclusion or opinion, and the overruling of appellant's motion to strike it out was not erroneous. Chicago City Ry. Co. v. Saxby, 213 Ill. 274; C. & E. I. R. R. Co. v. Randolph, 199 Ill. 126; Chicago City Ry. Co. v. McCaughna, 216 Ill. 202. There was also the testimony of a physician that she was nervous and that this was observable from her appearance.

During the closing argument of counsel for appellant he used the following language: "Gentlemen of the jury, this is the last time this woman will ever have a chance to recover against this company for the damages she has received. You are not to-day to—" At this point counsel for appellant objected. The court replied he understood counsel to mean if she was allowed damages at that time it would be all she ever could recover for the injury sustained, and counsel then proceeded, "You are not to-day to decide how much she is to receive for up to to-day and then let

her sue a year or two from now for what may be due at that time, but you are to settle the claim for all time." We are of opinion there is nothing harmful or prejudicial to appellant in this statement. Furthermore, no other ruling was asked of or made by the court. It is also claimed the damages are excessive. The proof shows appellee was forty-nine years old at the time of her injury, and before that time enjoyed good health. She sustained a fracture of her hip and was confined to her bed several weeks before she could sit up. She testified Dr. Abell, appellant's physician and surgeon, treated her three months; that when she first was able to be out of bed she was moved around on a chair, then got so she could walk with two crutches and walked in that way for nearly two years. At the time of the trial she was walking with the assistance of one crutch and a cane. She testified to having suffered a great deal of pain and to be so suffering to some extent at the time of the trial and that she was obliged at times to take medicine to enable her to rest and sleep. Two physicians testified the leg that was fractured at the hip was shortened fully two inches and was wasted away until it was much smaller than the other limb. One of them says it was an inch and a half or two inches smaller, and both say it was weakened and seriously affected appellee's ability to move around, and that this was permanent, though it might be improved somewhat by use and massage. Dr. Frederick also testified to her being nervous and that this nervous condition was apparent from her appearance. Taking into consideration the pain and suffering resulting from the injury, the fact that two years after it occurred she was obliged to use a crutch and cane to enable her to walk, and the further fact that the injury is permanent and she must remain a cripple all her life, we cannot say the verdict is excessive. Believing there is in this record no justifiable grounds for disturbing the judgment, it is affirmed.

*Affirmed.*

Mr. Justice DIBELL took no part in the consideration of this cause in this court.