153 So.2d 45 (1963)
WINN-DIXIE STORES, INC., a corporation, and Pepsi-Cola Bottling Company of Jacksonville, Inc., a corporation, Appellants,
v.
Muriel S. FELLOWS and Robert Fellows, her husband, Appellees.
No. D-183.
District Court of Appeal of Florida. First District.
May 23, 1963.
Rehearing Denied May 23, 1963.
Barnes & Slater; Marks, Gray, Yates, Conroy & Gibbs, Jacksonville, for appellants.
Robinson & Randle, Jacksonville, for appellees.
*46 WIGGINTON, Judge.
This appeal is from a final judgment entered in favor of the appellees Fellows upon a jury verdict rendered against both appellants, Winn-Dixie Stores, Inc., and Pepsi-Cola Bottling Company of Jacksonville, Inc., and from a judgment of involuntary non-suit taken by Winn-Dixie upon an announcement by the trial judge of his intention to direct a verdict in favor of Pepsi-Cola on Winn-Dixie's counterclaim.
By its appeal Pepsi-Cola contends that the trial court erred in denying its motion for directed verdict made at the conclusion of the evidence for the reason that the proof adduced at the trial failed as a matter of law to establish Pepsi-Cola's liability to plaintiffs.
By its appeal Winn-Dixie contends that the evidence was sufficient to establish a jury question on its right to recover over against Pepsi-Cola under the allegations of its counterclaim, and that the trial court erred in forcing it to take a non-suit by announcing the intention to grant a directed verdict in favor of Pepsi-Cola on the counterclaim.
The evidence, when considered in a light most favorable to appellees, establishes the following facts. At all times pertinent to the cause of action sued upon Winn-Dixie was the owner and operator of a grocery store in Jacksonville. For many years prior to plaintiff's injuries Pepsi-Cola sold and delivered to Winn-Dixie supplies of the beverage produced by it, and assumed the responsibility for constructing within the grocery store a display of its beverage for sale to the public. The display was constructed at a location designated by Winn-Dixie for that purpose. The beverages were delivered in small metal cartons consisting of six bottles each. The display was constructed by arranging the cartons in successive tiers, one tier being placed directly upon the other, until the display was built upward to such height as to make it clearly visible to the customers shopping in the store. For many months prior to the day on which appellee was injured Winn-Dixie had complained to Pepsi-Cola that the manner in which it was constructing its display created a hazardous and dangerous condition which might result in injuries to customers shopping in the store. The hazard consisted of Pepsi-Cola's negligent failure or refusal to place dividers of fiberboard between each tier of cartons; in constructing the display to excessive heights; and in delivering the beverage in metal cartons which were often found to be bent, rusted or torn.
Winn-Dixie had frequently experienced past occasions on which an attempt by a customer to remove a carton of beverage from the uppermost tier of the display caused another carton of beverage to slide or fall from the top tier to the floor, resulting in the bottles breaking and scattering glass over the area. It had also experienced past occasions when the metal caps on the bottles of beverage contained in one carton became engaged with the bottom of the carton placed immediately on top of it, which caused the lower carton of beverages to adhere to the upper carton when the latter was lifted from the display by a customer, resulting in the bottom carton dropping from the one being removed thereby causing it to fall to the floor. This likewise resulted in the breaking of bottles and scattering of glass in the area.
On the day in question Pepsi-Cola had constructed its display in the Winn-Dixie store in much the same manner as it had in the past. The display was built to an excessive height and no dividers had been placed between the tiers of cartons in the display. While shopping in the store appellee Fellows walked to the display for the purpose of removing therefrom a carton of beverages. She lifted a carton from the top tier of the display, and attempted to remove it outward from the stack. As she did so, the carton of beverages immediately beneath the one she sought to remove adhered to the upper carton, and before appellee became aware of what had happened, the bottom carton became disengaged and fell to the floor. Appellee was cut on the instep of *47 her foot by glass from one of the bottles which broke when it struck the floor.
Appellee's cause of action against Pepsi-Cola is on the theory that the latter carelessly and negligently arranged the display of its product in such manner as to create a dangerous condition as a proximate cause of which plaintiffs suffered damages. The cause of action against Winn-Dixie is upon the theory that it violated a duty owed by it to plaintiff to provide a safe place in which to shop by negligently permitting the dangerous condition created by the display to exist, the hazardous condition of which Winn-Dixie knew or ought to have known and which it should have corrected prior to the time of the accident.
We shall first consider Pepsi-Cola's contention that the court erred in denying its motion for directed verdict at the close of the evidence. The proof was such that the jury could have lawfully concluded that the beverage display arranged by Pepsi-Cola was done in a negligent and careless manner creating a dangerous condition which proximately caused the damages suffered by plaintiff. Construction of the display was completed some two or three hours prior to the accident which resulted in appellee's injuries. It is Pepsi-Cola's position that the cartons of beverage sold by it to Winn-Dixie became the property of the latter upon delivery; that Winn-Dixie had full knowledge of the manner in which the display was constructed by Pepsi-Cola several hours before the accident, and that Winn-Dixie's failure to remedy any alleged dangerous or hazardous condition created by the display was the sole proximate cause of plaintiff's injuries for which Pepsi-Cola should not be held liable. It contends that there were no latent or hidden defects in the construction of the display, and that Winn-Dixie had accepted the manner in which the display was constructed and was in exclusive possession and control of the premises prior to and at the time the accident occurred. In support of its position Pepsi-Cola relies on the decision rendered by the Supreme Court in the Slavin case.[1] This case involved damages suffered by a guest in a motel resulting from a latent defect caused by the negligent installation of a basin on the wall of the bathroom occupied by plaintiff. Both the motel owner and the plumbing contractor who installed the basin were sued as defendants. In response to the contractor's contention that he had completed his work and that the installation had been accepted by and was under the complete control of the motel owner at the time of injury, the contractor's negligence, if any, became the negligence of the owner for which the contractor should not be held liable. In disposing of this issue the Supreme Court recognized the general rule set forth in Restatement of the Law of Torts, § 385, as follows:
"`By occupying and resuming possession of the work the owner deprives the contractor of all opportunity to rectify his wrong. Before accepting the work as being in full compliance with the terms of the contract, he is presumed to have made a reasonably careful inspection thereof, and to know of its defects, and if he takes it in the defective condition, he accepts the defects and the negligence that caused them as his own, and thereafter stands forth as their author. When he accepts work that is in a dangerous condition, the immediate duty devolves upon him to make it safe, and if he fails to perform this duty, and a third person is injured, it is his negligence that is the proximate cause of the injury. His liability may be incurred either from his substitution for the contractor or from his neglect to repair.'"
In Slavin the contractor was nevertheless held liable because the defect caused by the negligent installation of the basin was hidden or latent, a condition unknown to *48 the owner and which could not have been discovered by a reasonable inspection.
The rule in Slavin was followed by the Third District Court of Appeal in the Baader case,[2] and in the Mastrandrea case.[3] Each of these cases involves the liability of a materialman for injuries suffered as a result of the negligent stacking of materials delivered by the materialmen to a contractor. In each instance the materials negligently stacked in a dangerous manner had been delivered to and accepted by the contractor to whom they were sold. No hidden or latent defects were involved. The rule in Slavin was applied to insulate the materialmen from liability.
Although the principle of law contended for by Pepsi-Cola is sound in every respect, and is recognized as the law of this state, it is our view that it has no application to the facts in the case now reviewed. The evidence clearly reveals that Pepsi-Cola's assumption of responsibility for constructing its beverage display in the Winn-Dixie store was for the mutual benefit of both Pepsi-Cola and Winn-Dixie. The display was part of a merchandizing plan to present Pepsi-Cola product to the buying public in a manner calculated to attract attention and stimulate buyer's interest. The display was installed for the purpose of making Pepsi-Cola products readily available to the customers shopping in the store, and with full knowledge that the customers purchasing Pepsi-Cola would serve themselves from the cartons forming the display which Pepsi-Cola constructed and arranged.
Under the facts shown by this record it is our view that Pepsi-Cola's liability comes within the well recognized exception to the general rule stated in Slavin, supra. For as stated in Slavin, it is well known from the decisions that there are about as many exceptions to this rule as there are factual situations to which it is applied.
One of the recognized exceptions to the rule concerning a contractor's non-liability for negligence is found in cases where the contractor's act may be regarded as an implied invitation to third persons to come in contact with the dangerous condition caused by defective construction. In such cases the contractor will be held liable to such third person who is injured or damaged as a result of a defect in such construction, occasioned by the negligence of the contractor, even though the injury has occurred after acceptance by the owner of the contractor's work.[4] The same rule is applicable to materialmen or suppliers.
For the reasons and upon the authorities above cited we hold that Pepsi-Cola was not relieved of liability for its negligent construction of the display which resulted in the injury suffered by plaintiff, even though the beverages which formed the display had been sold to, accepted by and were in the exclusive possession of Winn-Dixie at the time the accident occurred. The trial court was correct in denying Pepsi-Cola's motion for a directed verdict, and the judgment against it is accordingly affirmed.
Turning now to Winn-Dixie's contention that the proof adduced at the trial was sufficient to create a jury question as to its right to recover over against Pepsi-Cola as indemnity any damages which it may suffer as a result of a judgment against it in favor of Fellows. By its counterclaim Winn-Dixie alleged that Pepsi-Cola so carelessly and negligently stacked its display of its product within the store that the same created a dangerous and unsafe condition of which Winn-Dixie had no knowledge, and because of the close proximity in time to the construction of the display and the *49 happening of the accident described in plaintiffs' complaint whereby plaintiff was injured, Winn-Dixie had no opportunity to learn of the dangerous and unsafe manner in which Pepsi-Cola had constructed its display. It is alleged that the plaintiff's injuries were caused solely by the negligence of Pepsi-Cola, and that if Winn-Dixie is liable to the plaintiff by reason of the injuries suffered by them only because of the accident having occurred on Winn-Dixie's premises, then Pepsi-Cola is liable to Winn-Dixie to the extent that it may be liable to plaintiffs.
In support of the theory of its counter-claim Winn-Dixie relies upon the decision rendered by the Supreme Court in the Seaboard Air Line Railroad Co. case.[5] The principle of law stated in the Seaboard case is as follows:
"Generally, one of two joint tort-feasors cannot have contribution from the other. But there are exceptions to this rule, one of which is in that class of cases where although both parties are at fault and both liable to the person injured, such as an employee of one of them, yet they are not in pari delicto as to each other, as where the injury has resulted from a violation of the duty which one owes the other, so that as between themselves, the act or omission of the one from whom indemnity is sought is the primary cause of the injury. For a clear statement of this rule, which we hold is applicable to the case at bar, see Fidelity & Casualty Company v. Northwestern Telephone Exchange Company, 140 Minn. 229, 167 N.W. 800, and cases cited."
The foregoing rule is generally followed in most common law jurisdictions.[6] One of the clearest explanations of this rule was made by the Supreme Court of North Carolina in the Hunsucker case[7] as follows:
"Under the common law, an injured person can sue anyone or all of several joint tort-feasors whose negligent acts or omissions unite and produce his injury. * * *
"The general rule of the common law is that there is no right to indemnity as between joint tort-feasors. * * * This general rule is subject to certain well defined exceptions or limitations, which coalesce in the doctrine that a party secondarily liable in a tort action is entitled to indemnity from the party primarily liable, even in cases where both parties are denominated joint tort-feasors.
"One of these exceptions or limitations rests solely upon a difference between the kinds of negligence of two tort-feasors, and comes into play when the active negligence of one tort-feasor and the passive negligence of another tort-feasor combine and proximately cause an injury to a third person. * * * In such case, the passively negligent tort-feasor, who is compelled to pay damages to the injured person on account of the injury, is entitled to indemnity from the actively negligent tort-feasor. * * *
"The rationale of this exception or limitation is similar to that which underlies the entire law of indemnity. 42 C.J.S., Indemnity, §§ 2 and 23. It is simply this: The actively negligent tort-feasor and the passively negligent tort-feasor are both liable in damages to the injured third person for the joint wrong. As between themselves, however, the primary liability for the damages rests upon the actively negligent *50 tort-feasor because of the difference in the kinds of negligence of the two tort-feasors. When the passively negligent tort-feasor is forced to pay the damages to the injured third person, he discharges the obligation for which the actively negligent tort-feasor is primarily liable, and for this reason is entitled to indemnity from him. * * *
"Although it is bottomed on the liability of the actively negligent tort-feasor and the passively negligent tort-feasor to the same person for the joint wrong, this exception or limitation was ingrafted on the general rule denying indemnity by judicial decisions during the golden age of the quasi contract when judges resorted to legal fictions to lend the appearance of legal orthodoxy to new rules of law evolved by their own imaginations. The old-time judges said that the duty imposed by law upon the actively negligent tort-feasor to reimburse the passively negligent tort-feasor for the damages paid by him to the victim of their joint tort was based on an implied contract, meaning a contract implied in law from the circumstance that the passively negligent tort-feasor had discharged an obligation for which the actively negligent tort-feasor was primarily liable. And this is all the courts mean today when they declare that the right of the passively negligent tort-feasor to indemnity from the actively negligent tort-feasor rests upon an implied contract. There is, of course, in such case, no contract implied in fact. This is necessarily so because contracts implied in fact are true contracts based on consent. * * *"
It is Winn-Dixie's position that its liability to the plaintiff results only from its secondary or passive negligence in breaching a duty owed plaintiff because of its failure to discover and correct the dangerous display constructed by Pepsi-Cola prior to the time plaintiff was injured. From this premise Winn-Dixie argues that if because of its constructive negligence it is required to pay damages to plaintiff on account of the injuries sustained by her, it is entitled to indemnity from Pepsi-Cola whose active negligence was primarily responsible for the damages plaintiff suffered. This position can be sustained only if the proof establishes without conflict that Winn-Dixie was itself without primary fault; that is to say, it had no actual as distinguished from constructive knowledge that the display was built in a dangerous and hazardous manner.
During the trial the assistant manager of Winn-Dixie's store was called to testify as an adverse witness. He stated that he was present in the store at the time Pepsi-Cola constructed the display. He watched Pepsi-Cola's representative while he was engaged in the process of constructing the display and observed that the tiers of cartons were being stacked one upon the other without dividers being placed between them as he had requested in the past. Although the evidence is conflicting as to whether this witness continued to observe construction of the display until it was completed, we feel that this is immaterial. The witness testified that he was aware of the dangerous condition which resulted when no dividers were placed between the tiers of cartons in the display, and had personal knowledge of past occasions when a carton of beverage adhered to the one placed on top of it when the carton on the top tier was removed, resulting in the bottom carton becoming disengaged and falling to the floor causing the bottles to break. This is exactly the occurrence which caused plaintiff's injuries in the case we now review. Although the witness observed the dangerous condition which resulted from construction of the display on the day in question, neither he nor any other employee of Winn-Dixie took any action to correct the condition. Another employee of Winn-Dixie testified that he observed the Pepsi-Cola display after it had been completed and remarked to other employees of the store that it was built to an excessive height, evidently in an effort to place in the display a sufficient stock of beverages *51 to supply the needs of customers shopping in preparation for the coming Fourth of July holiday. As heretofore stated, the Pepsi-Cola display was in a dangerous and hazardous condition for a period of two to three hours prior to the time plaintiff attempted to serve herself from it and was injured.
On the basis of the foregoing proof coming from the mouths of Winn-Dixie's own employees, none of which was contradicted by other evidence, the jury could have reached no other lawful conclusion but that Winn-Dixie had actual knowledge of the dangerous manner in which the Pepsi-Cola display had been constructed for a sufficient period of time prior to the accident to have taken such steps as were necessary to correct the condition and protect the safety of its customers. Because of Winn-Dixie's failure to use due care in the premises its negligence in the transaction was not secondary or passive, but constituted primary and active negligence of the same degree for which Pepsi-Cola was guilty. There being no conflict in the evidence on this point, no jury issue on the question was created, and Winn-Dixie was not entitled as a matter of law to recover over from Pepsi-Cola as indemnity any loss it may suffer as a result of such judgment as may be rendered against it in favor of plaintiffs. Winn-Dixie was a joint tort-feasor with Pepsi-Cola and not entitled to contribution under the law of this state. Having failed to adduce proof sufficient to create a factual issue to be decided by the jury on its right to recover under its counterclaim, the question became one of law to be decided by the trial court. This question was resolved by the court holding as a matter of law that under the facts in evidence Winn-Dixie was precluded from recovery under the allegations of its counterclaim, and by announcing its intention to direct a verdict on the counterclaim against Winn-Dixie and for Pepsi-Cola.
For the reasons and upon the authorities above cited we conclude that the trial court was correct in making such announcement and that such ruling did not constitute error.
The judgment appealed is accordingly affirmed.
STURGIS, Acting Chief Judge, and RAWLS, J., concur.
NOTES
[1] Slavin v. Kay, (Fla. 1958) 108 So.2d 462.
[2] Baader et al. v. Looby, (Fla.App. 1961) 126 So.2d 745.
[3] Mastrandrea v. J. Mann, Inc., et al., (Fla.App. 1961) 128 So.2d 146.
[4] 13 A.L.R.2d p. 239, § 35; 58 A.L.R.2d p. 884, § 33c.
[5] Seaboard Air Line Railroad Co. v. American District Electric Protective Co., 106 Fla. 330, 143 So. 316.
[6] 27 Am.Jur., Indemnity, p. 467, § 18.
[7] Hunsucker v. High Point Bending and Chair Co., (N.C. 1953) 237 N.C. 559, 75 S.E.2d 768.