294 So.2d 374 (1974)
Alexander P. MAYBARDUK and Employers Fire Insurance Company, Appellants,
v.
Alberto S. BUSTAMANTE et al., Appellees.
No. 73-984.
District Court of Appeal of Florida, Fourth District.
May 10, 1974.
Bruce S. Bullock of Bullock & Alexander, P.A., Jacksonville, for appellants.
Edna L. Caruso for Howell Kirby Montgomery D'Aiuto Dean & Hallowes, West Palm Beach, for appellees Bustamante, Mercy Hospital and Ins. Co. of North America.
Russell Troutman of Troutman & Parrish, P.A., Winter Park, for appellee-Ricks.
MAGER, Judge.
This is an appeal by Alexander P. Maybarduk from an order dismissing his cross claim for indemnity.
Initially, a complaint was filed by Margie L. Ricks and Charles E. Ricks, plaintiffs *375 below, against Maybarduk (and his insurer), Alberto S. Bustamante and Mercy Hospital, Inc. (and its insurer), defendants below, seeking damages for injuries resulting from a hemostat having been negligently left in the abdomen of Margie Ricks. The complaint alleged, inter alia, that Margie Ricks had employed Maybarduk to perform surgery upon her and that Maybarduk "was a general surgeon in charge of the surgery with full authority over the conduct of the surgery at the time of the alleged negligence". It was further alleged that at the time of the surgery Maybarduk was assisted by the defendant Bustamante; that Bustamante was an employee of the defendant Mercy Hospital; and that the said defendants (Maybarduk and Bustamante) negligently left a hemostat in her abdomen.
In addition to compensatory damages, the plaintiff sought punitive damages against the defendant hospital alleging that she "relied on Mercy Hospital, Inc. to furnish her and Dr. Alexander P. Maybarduk competent and qualified medical people necessary to treat her and to assist Dr. Alexander P. Maybarduk", and that defendant hospital knew or should have known that Bustamante was unlicensed and inexperienced in the particular duties performed for Maybarduk.[1]
In addition to filing an answer Maybarduk filed an amended cross claim for indemnity against defendant Bustamante and his alleged employer  the defendant Mercy Hospital. The cross claim alleged, inter alia, that Maybarduk:
"... requested, on behalf of his patient the plaintiff, that defendant MERCY HOSPITAL INC. OF ORLANDO furnish him such qualified, skilled, and trained assistants, including an assistant physician, and such surgical equipment and facilities, as might be reasonably required in the performance of such surgery upon said plaintiff."
Additionally, Maybarduk alleged that he relied upon the defendant hospital to furnish him facilities and assistance; that defendant Bustamante, who was paid by the defendant hospital, was assigned by the hospital to act as Maybarduk's assistant in the surgery performed upon Ricks. Maybarduk's cross claim further alleged that:
"... it was the duty of defendant BUSTAMANTE to observe all activities in the surgical field, to hold tissue and organs not involved in the surgery out of the operative field while the surgeon, defendant MAYBARDUK, concentrated upon the details of such surgery, and it was the custom of such surgical assistants, and the nondelegable duty of defendant BUSTAMANTE, to use surgical clamps in holding back tissues or in clamping bleeding vessels as observed by *376 such assistant at surgery, and defendant MAYBARDUK relied upon defendant BUSTAMANTE to perform such duties in a careful and skillful manner."
Maybarduk specifically alleged that the hemostat left in the abdomen of Ricks was "not placed in the body of the plaintiff ... by defendant ... and was found on the side of her body attended by defendant Bustamante while acting as assistant at surgery under the employment and direction of defendant hospital...". Maybarduk sought indemnification from the defendant hospital and Bustamante (and their insurer) for any sums which a jury may find he is obligated to pay as damages to plaintiffs contending that his negligence "if any, was passive, and his liability vicarious". Alternatively, Maybarduk contended he was entitled to be indemnified "by reason of the negligence of defendants ... while acting as his agents in the performance of the required surgery upon the plaintiff". Defendants Bustamante and Mercy Hospital filed a motion to dismiss Maybarduk's cross claim on the ground that it failed to state a cause of action; said motion was granted by the trial court. In our opinion the trial court erred in dismissing Maybarduk's cross claim inasmuch as the cross claim stated a cause of action for indemnity against the third party defendants.
It is axiomatic that a defendant moving to dismiss a complaint is deemed to have admitted all facts pleaded in the complaint as well as all reasonable inferences arising from these facts. Bond v. Koscot Interplanetary, Inc., Fla.App. 1971, 246 So.2d 631. The allegations contained in Maybarduk's cross claim (complaint) regarding the status, capacity, duties and responsibilities of (and by and between) Bustamante, the hospital and Maybarduk, which Maybarduk contended placed him in a position of being vicariously liable (for his negligence, if any,) must be assumed to be true for the purpose of determining the validity of defendants' motion to dismiss. On the basis of general principles of pleading and practice the cross claim stated a cause of action.
Whether Maybarduk can prove his allegation is another proposition; but assuming he can, he would be entitled to the relief requested. In so concluding, this court is not unaware of the general proposition of law that there is no contribution among joint tort-feasors. Seaboard Air Line Ry. Co. v. American District Electric Protective Co., 106 Fla. 330, 143 So. 316 (1932); Winn-Dixie Stores, Inc. v. Fellows, Fla.App. 1963, 153 So.2d 45; Westinghouse Electric Corp. v. J.C. Penney Co., Fla.App. 1964, 166 So.2d 211; Stembler v. Smith, Fla.App. 1970, 242 So.2d 472; Aircraft Taxi Co. v. Perkins, Fla.App. 1969, 227 So.2d 722; 60 A.L.R.2d 1366; cf. 8 A.L.R.3d 639; 46 A.L.R.3d 801. In the trial court, the defendants contended that the application of this principle would preclude Maybarduk from maintaining his cross claim as against his codefendants and joint tort-feasors. We would observe, however, that there is a recognized exception to this general rule which would permit an action for contribution or indemnification.[2] In Seaboard Air Line Ry. Co., supra, 143 So. at p. 316, it is stated:
"Generally, one of two joint tort-feasors cannot have contribution from the other. But there are exceptions to this rule, one of which is in that class of cases where although both parties are at fault and both liable to the person injured, such as an employee of one of them, yet they are not in pari delicto as to each other, as where the injury has resulted from a violation of the duty which one owes the other, so that as between themselves, the act or omission of the one from whom indemnity is sought is the primary cause of the injury. ..."
*377 Although the aforementioned principle talks in terms of "a violation of the duty which one owes the other" the omission of which is "the primary cause of the injury" later cases seem to couch this exception in terms of "active-passive" negligence.[3] Westinghouse Electric Corp. v. J.C. Penney Co., supra; Peoples Gas System, Inc. v. B & P Restaurant Corp., Fla.App. 1973, 271 So.2d 804; Florida Power & Light Co. v. General Safety Equip. Co., Fla.App. 1968, 213 So.2d 486; Stembler v. Smith, supra. In Western Electric Corp. v. J.C. Penney Co., supra, the First District in quoting from Winn-Dixie Stores, Inc. v. Fellows, supra, made reference to the "active-passive" principle:
"`One of these exceptions or limitations rests solely upon a difference between the kinds of negligence of two tort-feasors, and comes into play when the active negligence of one tort-feasor and the passive negligence of another tort-feasor combine and proximately cause an injury to a third person. * * * In such case, the passively negligent tort-feasor, who is compelled to pay damages to the injured person on account of the injury, is entitled to indemnity from the actively negligent tort-feasor. * * *'" (166 So.2d 214).
Illustrative of the foregoing are the following quoted statements appearing in the Winn-Dixie decision, supra, 153 So.2d at pp. 49-50:
"`Under the common law, an injured person can sue anyone or all of several joint tort-feasors whose negligent acts or omissions unite and produce his injury. * * *
"`The general rule of the common law is that there is no right to indemnity as between joint tort-feasors. * * * This general rule is subject to certain well define exceptions or limitations, which coalesce in the doctrine that a party secondarily liable in a tort action is entitled to indemnity from the party primarily liable, even in cases where both parties are denominated joint tort-feasors.
"`One of these exceptions or limitations rests solely upon a difference between the kinds of negligence of two tort-feasors, and comes into play when the active negligence of one tort-feasor and the passive negligence of another tort-feasor combine and proximately cause an injury to a third person. * * * In such case, the passively negligent tort-feasor, who is compelled to pay damages to the injured person on account of the injury, is entitled to indemnity from the actively negligent tort-feasor. * * *
"`The rationale of this exception or limitation is similar to that which underlies the entire law of indemnity. 42 C.J.S. Indemnity §§ 2 and 23. It is simply this: The actively negligent tort-feasor and the passively negligent tort-feasor are both liable in damages to the injured third person for the joint wrong. As between themselves, however, the primary liability for the damages rests upon the actively negligent tort-feasor because of the difference in the kinds of negligence of the two tort-feasors. When the passively negligent tort-feasor is forced to pay the damages to the injured third person, he discharges the obligation for which the actively negligent tort-feasor is primarily liable, and for this reason is entitled to indemnity from him. * * *'"
In the instant case Maybarduk contends that his negligence, if any, was passive or secondary and that the negligence of the defendants was active and primary and that Maybarduk's liability, if any, was vicarious by virtue of the actions of his *378 agents, i.e., Bustamante and Mercy Hospital.[4] If, for example, Maybarduk is able to prove that the active and primary negligence was that of Bustamante in leaving the hemostat in the injured party's abdomen, then under the above cited rationale Maybarduk would be entitled to indemnification from Bustamante. Conceivably, it might also be shown that the hospital's negligence was primary by reason of its omission of a duty owed to Maybarduk, i.e., to furnish him with a competent and skilled assistant, so as to give rise to indemnification within the rationale of Seaboard, supra; Buzan v. Mercy Hospital, Inc., Fla.App. 1967, 203 So.2d 11; Grant v. Touro Infirmary, La. 1969, 254 La. 204, 223 So.2d 148; 40 Am.Jur.2d, Hospitals and Asylums, § 29.
Whether Bustamante was Maybarduk's "borrowed servant" or the hospital's employee (which fact is yet to be determined) would not necessarily be determinative of the respective primary and secondary liability as between Maybarduk and the hospital. If it is shown that the hospital owed Maybarduk a duty then not withstanding the fact that Bustamante was Maybarduk's borrowed servant over whom Maybarduk had supervision and control, indemnification might still lie against the hospital if it could be shown that the hospital's omission of its duty (to furnish a qualified assistant) was the primary cause of the injury. Seaboard Air Line Ry. Co. v. American District Electric Protective Co., supra; 40 Am.Jur.2d, Hospitals and Asylums, § 29; 18 Am.Jur.2d, Contribution, § 39.
The factual circumstances present in the case under consideration reflect a varied melange of legal and factual nuances and ramifications the determination of which can better be resolved by a hearing on the merits rather than at the pleading stage. Maybarduk may well be unable to prove the hospital's omission of a duty was the primary cause of the injury but nonetheless Maybarduk may be able to show that as between himself and Bustamante, Maybarduk was passively negligent and Bustamante was actively negligent.
It is impossible at this juncture of the proceedings for a court to categorically conclude that Maybarduk is not entitled as a matter of law to pursue his claim; although it may later develop that some other type of summary disposition would be appropriate. Peoples Gas System, supra.
Although we conclude that Maybarduk's cross claim states a cause of action for the reasons hereinabove set forth, we cannot overlook the contention of Maybarduk that the Supreme Court's recent decision of Hoffman v. Jones, Fla. 1973, 280 So.2d 431, should be construed as abrogating the rule prohibiting contribution between joint tort-feasors. The Hoffman case, which originated in this court, rejected the contributory negligence rule in favor of a comparative negligence rule. Jones v. Hoffman, Fla.App. 1973, 272 So.2d 529.
In upholding this court's determination, the Supreme Court declined to make any definite determination as to the effect of comparative negligence on the contribution rule. There is, however, a suggested inference from the language of the Supreme Court opinion that the comparative negligence rule was not intended to alter the concept of no contribution among joint tort-feasors. Two recent decisions from the Third District support that proposition. Issen v. Lincenberg, Fla.App. 1974, 293 So.2d 777, opinion filed March 26, 1974; Rader v. Variety Children's Hospital, Fla.App., 293 So.2d 778 opinion filed April 2, 1974; cf. Comparative Negligence  Some Unanswered Questions, The Florida Bar Journal, Vol. 47, No. 9, October 1973. We find no fault with our sister court's interpretation of the Hoffman decision as it relates to *379 the concept of no contribution between joint tort-feasors.
Accordingly, the order dismissing Maybarduk's third party cross claim is vacated and the cause remanded for further proceedings in accordance with this opinion.
CROSS, J., and MOUNTS, MARVIN U., Jr., Associate Judge, concur.
NOTES
[1] Specifically plaintiff alleged:

"9. The Defendant, ALBERTO S. BUSTAMANTE, was not a licensed physician in the State of Florida and the Defendant, MERCY HOSPITAL, INC., knew he was not a physician licensed to practice in the State of Florida.
"10. The Defendant, ALBERTO S. BUSTAMANTE, was a general practitioner in Cuba at one time but never did any surgery and had done no surgery at the time of his employment by the Defendant, MERCY HOSPITAL, INC. and Defendant, MERCY HOSPITAL, INC., knew, or should have known, this.
"11. The Defendant, ALEXANDER P. MAYBARDUK, relied on the Defendant, ALBERTO S. BUSTAMANTE, as having some experience and knowledge in surgery and gave discretion to this inexperienced physician to place instruments in the body of the Plaintiff, MARGIE L. RICKS, and to take instruments out of the body of said Plaintiff without specific instructions from the Defendant, ALEXANDER P. MAYBARDUK, and the Defendant, MERCY HOSPITAL, INC., either knew, or should have known, that the general surgeon in charge, ALEXANDER P. MAYBARDUK, placed that confidence and discretion in the Defendant, ALBERTO S. BUSTAMANTE.
"12. The Defendant, ALBERTO S. BUSTAMANTE, did not know how to do a colon resection which was the surgical procedure being done on the Plaintiff when an instrument was left in her and admits that he was not qualified to perform a colon resection and the Defendant, MERCY HOSPITAL, INC., either knew, or should have known, this fact."
[2] There is a distinction between contribution and indemnification. This distinction is discussed in 8 A.L.R.3d 640.
[3] The "active-passive" terminology has been criticized; the terms "primary" and "secondary" negligence have been regarded as more accurately and technically appropriate. Dole v. Dow Chemical Company, 1972, 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288; see also Pachowitz v. Milwaukee & Suburban Transport Corp., 1972, 56 Wis.2d 383, 202 N.W.2d 268; cf. Bielski v. Schulze, 1962, 16 Wis.2d 1, 114 N.W.2d 105.
[4] Whether a claimant or party is actively or passively negligent or primarily or secondarily negligent is a question of fact to be resolved by the trier of fact. Peoples Gas System, Inc. v. B & P Restaurant Corp., Fla.App. 1973, 271 So.2d 804.