302 So.2d 187 (1974)
Frank M. STUART, M.D., P.A., and Underwriters at Lloyds, Petitioners,
v.
The HERTZ CORPORATION, George Holbrook, Individually and As Father and Next Friend and Guardian Ad Litem of Stafford Holbrook, a Minor, Respondents.
No. 74-178.
District Court of Appeal of Florida, Fourth District.
September 27, 1974.
Rehearing Denied November 19, 1974.
*188 James E. Tribble of Blackwell, Walker, Gray, Powers, Flick & Hoehl, Miami, for petitioners.
Herman M. Klemick of George P. Telepas, P.A., Miami, for plaintiffs Ruth and Louis McCutcheon.
Stephen A. Stieglitz, of Pomeroy & Betts, Fort Lauderdale, and Knight Peters Hoeveler, Pickle, Niemoeller & Flynn, Miami, for respondents.
MAGER, Judge.
Petitioners, Frank M. Stuart, M.D., P.A., and Underwriters at Lloyds, filed a petition for writ of certiorari to review an order of the trial court denying petitioners' motion to dismiss a third-party complaint.
In the proceedings before the trial court, one Ruth Johnson McCutcheon and Louis N. McCutcheon, her husband (plaintiffs below), filed suit against Hertz Corporation, George Holbrook, individually and as father and next friend and guardian ad litem of Stafford Holbrook, a minor (defendants below), respondents herein, claiming injuries arising out of an automobile accident. Stafford Holbrook was alleged to have been negligently operating a motor vehicle (owned by Hertz) which struck the motor vehicle driven by Ruth McCutcheon.
The plaintiffs' complaint alleged, inter alia, "that as a direct and proximate result of the negligence as aforesaid, the Plaintiff was injured in and about her body and extremities and/or suffered aggravation of a known or unknown pre-existing condition or disease, incurred medical and hospital expenses, suffered pain therefrom, suffered physical handicap and her working ability was impaired ...". After filing its answer Hertz (and the Holbrooks) filed a third-party complaint against Dr. Frank M. Stuart (and his insurer) alleging, in part, that as a result of the injuries received in the accident involving Holbrook, plaintiff McCutcheon was medically treated by Dr. Stuart and that:
"... all or apart of the alleged injuries and damages complained of by *189 RUTH JOHNSON MC CUTCHEON and LOUIS N. MC CUTCHEON and set out in the Amended Complaint attached hereto were proximately caused by the negligent and unskilled medical treatment by the Third Party Defendant, FRANK M. STUART, M.D., on RUTH JOHNSON MC CUTCHEON, and the Third Party Plaintiffs seek relief upon the following grounds ..."
In essence, Hertz and the Holbrooks, third party plaintiffs below, contended that during the course of a surgical operation being performed by Dr. Stuart, third party defendant below, he (Stuart) "negligently and carelessly severed the carotid artery" which resulted in neurological damages to Mrs. McCutcheon.
The third party complaint filed by Hertz sought indemnification from Dr. Stuart for his alleged acts of negligence as follows:
"9. That the Third Party Plaintiffs contend that whatever responsibility for damages, if any, may be ultimately determined by a jury would be limited to an orthopedic disability and that the Third Party Defendants are liable for any damages for neurological damages caused by Dr. Stuart's negligence; that the Third Party Plaintiffs are only secondarily liable for the neurological damages and are but passive tort feasors and as such are entitled to indemnification from the active tort feasor, DR. FRANK STUART."
At the outset, we hold that a petition for common law certiorari is an appropriate method by which to review an action of the trial court in refusing to dismiss the third party complaint. Beta Eta House Corporation v. Gregory, Fla.App. 1970, 230 So.2d 495. An interlocutory appeal is not available under the circumstances of this case; however, certiorari will lie inasmuch as it is our view that if the order denying petitioner's motion to dismiss the third party complaint is erroneous, such a denial would "constitute a departure from the essential requirements of law and [would] cause material injury to the petitioners throughout the remainder of the proceedings from which there will be no adequate remedy by appeal". Beta Eta v. Gregory, supra.
The parties concede that there are no reported decisions in this state involving the right of a tort feasor initially causing an injury to recover indemnification against a physician for aggravating the injury in the course of treatment. This case is therefore one of first impression in this state.
In order to resolve the precise question presented, it is necessary to discuss several general and well recognized principles which are deemed pertinent to the disposition of this appeal.
There is no question but that a tort feasor is responsible for all injuries which flow naturally from the original act. As stated in J. Ray Arnold Corporation of Olustee v. Richardson, 1932, 105 Fla. 204, 141 So. 133, 135:
"`Where one who has suffered personal injuries by reason of the negligence of another exercises reasonable care in securing the services of a competent physician or surgeon, and in following his advice and instructions, and his injuries are thereafter aggravated or increased by the negligence, mistake, or lack of skill of such physician or surgeon, the law regards the negligence of the wrongdoer in causing the original injury as the proximate cause of the damages flowing from the subsequent negligent or unskillful treatment thereof, and holds him liable therefor... ."
There is no dispute, therefore, as to the responsibility of Hertz (and Holbrook) the original (alleged) tort feasors to the injured plaintiff regardless of the alleged negligence of Dr. Stuart in aggravating the original injury (assuming of course that Hertz and Holbrook are ultimately found to have been negligent). The third party complaint filed by Hertz does not suggest a departure from this rule but on *190 the contrary, recognizes the existence of this general principle.
It is a general principle of law in this state that there is no contribution among joint tort feasors. See Maybarduk v. Bustamante, (Ricks), 294 So.2d 374, Fourth District Court of Appeal opinion filed May 10, 1974, and cases cited therein. As this court indicated in Maybarduk we find nothing in the recent decision in Hoffman v. Jones, Fla. 1973, 280 So.2d 431, which would suggest a departure from the rule of no contribution. The third party complaint does not seek to alter or abrogate this concept; on the contrary, the third party complaint is predicated upon indemnification rather than contribution.
A reading of Rule 1.180 FRCP, relating to third party practice and the commentaries and case law thereunder, indicates that this procedure is available in situations involving reimbursement or indemnification. Rule 1.180, FRCP, provides in part as follows:
"(a) When Defendant May Bring in Third Party. At any time after commencement of the action a defendant as a third party plaintiff may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him. ..."
In Florida Civil Practice Before Trial, 2d ed., published by The Florida Bar Continuing Legal Education, the textwriter points out:
"Third party practice is the procedure available to a defendant (or counter-defendant) to join a person who is not a party to the action in circumstances arising out of the same set of facts when the added party is or may be liable to compensate, reimburse or indemnify the defendant for the plaintiff's claim."
Considering the foregoing principles as they relate to the facts, we are presented with a defendant who has been charged with tortious conduct giving rise to personal injuries suffered by a plaintiff and will be held responsible for any damages flowing from the original wrongful act if found to be negligent; such defendant, by way of third party practice, however, seeks indemnification from another alleged wrongdoer "who is or may be liable" to defendant for "all or part of plaintiff's claim against the defendant". The third party action being one for indemnification (not contribution) is, in our view, consistent with the rules pertaining to third party practice and the general principles of law heretofore set forth. Chappell v. Scarborough, Fla.App. 1969, 224 So.2d 791.
At this juncture it would be appropriate to recognize that there is a basic distinction between contribution and indemnification, although courts have sometimes used these words interchangeably. Contribution, which is predicated upon equitable principles, involves a distribution of loss among (joint) tort feasors who stand in pari delicto by requiring each to pay a proportionate share based upon their proportionate degree of responsibility. 18 Am.Jur.2d, Contribution, sec. 2; 41 Am.Jur.2d, Indemnity, sec. 3. Indemnity, which springs from contract, express or implied, seeks to shift the entire loss from one tort feasor who has been compelled to pay it onto the shoulders of another tort feasor who should bear it instead (such tort feasors not being in pari delicto). Mims Crane Service, Inc. v. Insley Mfg. Corp., Fla.App. 1969, 226 So.2d 836.
Although the distinction between contribution and indemnity suggests that the former is predicated upon equitable principles and the latter upon contract, an examination of the cases involving indemnity actions will reflect that the right of indemnification does indeed involve strong equitable considerations. In Mims Crane Service, Inc. v. Insley Mfg. Corp., supra, it was pointed out, at p. 839:
"`Although it has been said that the right to indemnity springs from a contract, *191 express or implied, the modern cases note that contract furnishes too narrow a basis, and that principles of equity furnish a more satisfactory basis for indemnity. Thus, a right of indemnity has been said to exist whenever the relation between the parties is such that either in law or in equity there is an obligation on one party to indemnify the other, as where one person is exposed to liability by the wrongful act of another in which he does not join. The rule proposed in the Restatement of Restitution makes no specific reference to contract and appears to be based on principles of equity; it provides that a person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity from the other, unless the payor (indemnitee) is barred by the wrongful nature of his conduct.'" (Emphasis supplied.)
Whereas our courts have denied contribution among joint tort feasors our courts have recognized the right of a tort feasor to seek indemnification from another tort feasor. Maybarduk, supra. See also Fincher Motor Sales, Inc. v. Lakin, Fla. App. 1963, 156 So.2d 672.[1] Apart from the existence of an express contract to indemnify, indemnity has been permitted where it is predicated upon the existence and violation of a duty as between the tort feasors, Seaboard Air Line Ry. Co. v. American District Electric Protective Co., 106 Fla. 330, 143 So. 316 (1932), and likewise where it has been predicated upon the degrees of wrongful conduct as between the tort feasors, Winn-Dixie Stores v. Fellows, Fla.App. 1963, 153 So.2d 45, i.e., active-passive negligence.
Although denominated as constituting an "exception" to the principle of no contribution among joint tort feasors, the concept of indemnification  from its very nature and definition  is separate and distinct from contribution. No doubt, the inflexibility of the contribution rule gave rise to what our courts have described as an "exception" or limitation upon the rule of no contribution. As aptly observed in Dole v. Dow Chemical Co., 1972, 30 N.Y.2d 143, 150, 331 N.Y.S.2d 382, 388, 282 N.E.2d 288, 293:
"It has been observed that the doctrine of indemnity `evolved in the unnatural surroundings of an inflexible rule against contribution' and that courts have relied on `artificial distinctions' such as `active-passive' and `misfeasance-nonfeasance' (65 Col.L.Rev. 123, 126, op. cit.)."
In Seaboard Airline Railway, supra, 143 So. at p. 316, the concept of indemnification based upon the existence of a duty is discussed:
"Generally, one of two joint tort-feasors cannot have contribution from the other. But there are exceptions to this rule, one of which is in that class of cases where although both parties are at fault and both liable to the person injured, such as an employee of one of them, yet they are not in pari delicto as to each other, as where the injury has resulted from a violation of the duty which one owes the other, so that as between themselves, the act or omission of the one from whom indemnity is sought is the primary cause of the injury. ..." (Emphasis supplied.)
In Winn-Dixie v. Fellows, supra, the principle of indemnity predicated upon the concept of active (primary) negligence is discussed:
"`One of these exceptions or limitations rests solely upon a difference between the kinds of negligence of two tort-feasors, and comes into play when the active negligence of one tort-feasor and the passive negligence of another tort-feasor combine and proximately cause an injury *192 to a third person. * * * In such case, the passively negligent tort-feasor, who is compelled to pay damages to the injured person on account of the injury, is entitled to indemnity from the actively negligent tort-feasor. * * *'" (153 So.2d 49) (Emphasis supplied.)
The problem in the case sub judice is that the third party complaint for indemnification does not neatly fit within the package of indemnity and the so-called express contract, duty, or active-passive tests. Clearly, there was no express (or implied) contract between Hertz and Dr. Stuart; nor can it be said that Dr. Stuart breached a duty to Hertz; furthermore, Hertz cannot effectively assert that its negligence, which gave rise to the original injuries to Mrs. McCutcheon, was passive or secondary, where Dr. Stuart's alleged negligence was active and primary. Compare with Maybarduk, supra. Moreover, Hertz does not appear to be attempting to shift its entire loss to Stuart (as is ordinarily the case in indemnification) but is rather attempting to seek indemnification for whatever damages Hertz will have to pay as a result of Stuart's negligence.
Nevertheless, several recent decisions in other jurisdictions have recognized that an action for indemnity will lie between tort feasors for the aggravation of injuries to a plaintiff. In a factual situation strikingly similar to the instant case involving a third party claim against a physician for alleged negligent (aggravating) treatment, the Illinois Supreme Court astutely recognized that what the third party plaintiff's complaint sought was "not contribution or [indemnification] in the traditional form." Gertz v. Campbell, Ill. 1973, 55 Ill.2d 84, 302 N.E.2d 40. In this regard the court observed:
"Turning to Snyder's other contention, we do not consider that the right to indemnity must be unalterably restricted to the outlines he has described. The right should be capable of development to meet perceived requirements for just solutions in questions involving multiple tortfeasors. The historical aversion of courts to compare the fault of tort-feasors when contribution or indemnity has been sought has not prevented them from developing concepts which allowed indemnity when equity required. As an example, courts came to contrast the faults of an active tortfeasor with that of a passive one and to allow indemnity to the less culpable offender. And to illustrate there can and should be a continuing search for better solutions, the Court of Appeals of New York has recently supplanted this active-passive negligence criterion for indemnity with one founded on equitable principles. Dole v. Dow Chemical Co. (1972), 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288."
In Gertz it was alleged by Gertz that Campbell negligently drove his car against Gertz causing injuries to him. Campbell filed a third party action against Snyder, who had treated Gertz, alleging that it was Dr. Snyder's negligence that resulted in the ultimate amputation of Gertz's leg. Campbell recognized that he would be liable for the aggravation of Gertz's injury caused by the negligence of Dr. Snyder but asked that he be given (should he be found liable to Gertz) indemnity against Dr. Snyder for the amount of damages caused to Gertz as a result of the aggravation caused to plaintiff's existing injury.
The Supreme Court of Illinois made several interesting and pertinent observations with respect to contribution and indemnification. Illinois, like Florida, prohibits contribution among joint tort feasors. The Illinois court, however, pointed out that Campbell (like Hertz-Holbrook) and Dr. Snyder (like Dr. Stuart) were not joint tort feasors so that the contribution rule had no applicability. The Illinois court reasoned that Campbell and Snyder were not joint tort feasors because they did not act in concert with each other; neither had control over the acts of each other; that Campbell had nothing to do with the selection of Snyder and that the wrongful *193 conduct and injuries sustained were at different times. In this regard the Illinois court observed, in part:
"... Campbell is to be liable for the aggravation of the injuries suffered by Gertz because of Dr. Snyder's negligence simply because it is the policy of the law to hold him legally responsible for the additional damages which are said to have been foreseeable. He did not act in concert with Dr. Snyder. There is nothing to suggest that he had anything to do with the selection of the physician and certainly he had no control over Snyder's conduct. There was nothing he could have done to have prevented the independent negligence of the physician. If Campbell, who is to be liable for the malpractice of Dr. Snyder, is precluded from seeking indemnity from Snyder, the result will be a really indefensible enrichment of Snyder at the expense of Campbell. (Leflar, Contribution and Indemnity Between Tortfeasors, 81 U.Pa.L.Rev. 130, 146-147 (1932).) We agree with the appellate court's holding that Campbell had a right to bring the action to be indemnified for the damages to the plaintiff attributable to the malpractice."
In addition to the decision in Gertz v. Campbell, supra, other courts have recognized a right in the original tort feasor to recover damages for a third party's malpractice. Herrero v. Atkinson (1964), 227 Cal. App.2d 69, 38 Cal. Rptr. 490; Clark v. Halstead (1949), 276 App.Div. 17, 93 N.Y.S.2d 49; Fisher v. Milwaukee Electric Ry. & Light Co., 1920, 173 Wis. 57, 180 N.W. 269. And see generally, Annot. 8 A.L.R.3d 639. But see Transcon Lines v. Barnes, Ariz. App. 1972, 17 Ariz. App. 428, 498 P.2d 502, contra.
The Herrero case, supra, much like the Gertz case bears a strong factual similarity to the instant situation. Herrero, while driving a motor vehicle, was involved in an accident with another vehicle causing injuries to one Alice Lorenzo. Some months later Lorenzo employed Drs. Atkinson, Goddard and Viano to perform an operation made necessary because of her injury by Herrero. In the course of the operation Lorenzo died. The estate of Lorenzo filed an action for damages for wrongful death against Herrero, the hospital, and the doctors. One of the allegations was that there was negligence in the administering of a blood transfusion during the course of Lorenzo's operation. Herrero filed a cross complaint for indemnity naming the hospital and the doctors as cross defendants contending that his liability would attach by reason only of the negligence of the doctors and the hospital and hence the cross defendants were bound to indemnify him for such liability.
The California court also noted the distinction between indemnity and contribution pointing out particularly the prohibition against contribution among joint tort feasors. The court, however, pointed out the "right to [employ] indemnity ... has been allowed in many cases and in varying fact situations where considerations of equity required the right to be recognized".[2] In particular, the court stated:
"The duty to indemnify may arise, and indemnity may be allowed in those fact situations where in equity and good conscience the burden of the judgment should be shifted from the shoulders of the person seeking indemnity to the one from whom indemnity is sought. The right depends upon the principle that everyone *194 is responsible for the consequences of his own wrong, and if others have been compelled to pay damages which ought to have been paid by the wrongdoer, they may recover from him. Thus the determination of whether or not indemnity should be allowed must of necessity depend upon the facts of each case... ." (8 A.L.R.3d 634).
* * * * * *
"... Although the original negligence of Herrero may be regarded in law as a proximate cause of the damages flowing from the subsequent malpractice of the cross-defendants, and the plaintiff may recover a joint and several judgment against all who are found liable, there is no reason why the ultimate burden of damages should not be distributed among the various defendants, and each be made to bear that portion of the judgment which in equity and good conscience should be borne by him. Here, Herrero has had no part in the selection of any of the cross-defendant doctors or hospital. Nothing appears to indicate that he was even aware of the decedent's decision to submit to surgery. He has had no control or direction over the conduct of the cross-defendants and not the slightest opportunity to protect himself against their negligence, yet he is made liable in law for any damages caused by them. Under such circumstances it is equitable and just that indemnity be allowed Herrero, and that the cross-defendant doctors and hospital bear that portion of the damages caused by their own negligent conduct." (A.L.R.3d 635).
We, therefore, conclude that there is an equitable right to indemnity under certain factual considerations and particularly under the facts present in the case sub judice; a tort feasor initially causing an injury has the right to seek indemnification against the physician for aggravating injury in the course of treatment. Recognition of this principle (whether denominated as an exception upon or limitation to the no contribution rule) is consistent with (having little difference in character and quality from) the so-called "active-passive" negligence exception and the so-called "duty" exception previously recognized by the courts of this state as a method of mitigating the "inflexible rule against contribution".[3]
Therefore, the order denying petitioners' motion to dismiss the third party complaint is approved; accordingly, the petition for certiorari is denied.
CROSS, J., and ANDERSON, ALLEN C., Associate judge, concur.
NOTES
[1] In addition, see Olin's Rent-A-Car System, Inc. v. Royal Continental Hotels, Fla.App. 1966, 187 So.2d 349.
[2] A number of cases have permitted third party actions by the original tort feasor against the physician who aggravated the injury on the theory of subrogation, i.e., the original tort feasor is subrogated to any right of action which the injured person may have had against the physician for malpractice. See Clark v. Halstead, supra, and Fisher v. Milwaukee Electric Ry. & Light Co., supra. See Annotation: Right of Tortfeasor Initially Causing Injury to Recover Indemnity or Contribution from Medical Attendant Causing New Injury or Aggravating Injury in Course of Treatment, 8 A.L.R.3d 639.
[3] It is well to point out (as was done in Herrero) that the third party complaint does not alter the right of a plaintiff to sue whom he wants and to recover against any one or all of the defendants he names and who are ultimately found liable. The plaintiff is not concerned with the claims of the named defendants between one another or the claims of defendants against third parties. Regardless of any distribution of liability between the defendants because of indemnification a plaintiff may satisfy his judgment against one or all of the tort feasors he sues and who are ultimately found to be liable.