332 So.2d 687 (1976)
FLORIDA POWER CORPORATION, a Florida Corporation, Appellant,
v.
Charles F. TAYLOR et al., Appellees.
No. 75-1161.
District Court of Appeal of Florida, Second District.
May 28, 1976.
*689 Jeffrey S. O'Brien and Sam H. Mann, Jr., of Harrison, Greene, Mann, Rowe & Stanton, St. Petersburg, for appellant.
Donald V. Bulleit and William T. Atchley, Jr., of Fowler, White, Gillen, Boggs, Villareal & Banker, St. Petersburg, for Diversacon.
Ralph E. Elliott, Jr., and Frank C. Decker, Jacksonville, for Canal Authority of the State of Florida.
Stephen P. Kanar, of Fishback, Davis, Dominick & Simonet, Orlando, and Russell Troutman, of Troutman & Parrish, Winter Park, for Charles F. and Dolores Taylor.
SCHEB, Judge.
Appellant/Florida Power Corporation contends the trial court erred in entry of summary judgments against it on its third party complaint seeking both indemnity and contribution against the appellee/Canal Authority of the State of Florida and in seeking indemnity against appellee/Diversacon, Inc. We agree and reverse.
Charles Taylor and Dolores Taylor, his wife, sued Florida Power, alleging Mr. Taylor, an employee of Diversacon, undertook to measure the distance between the ground and one of Florida Power's high voltage transmission lines by extending a surveyor's rod into the vicinity of the line, whereupon the electrical current arced from the line to the rod resulting in injury to him. The Taylors further alleged that Florida Power, having actual or constructive knowledge of construction activities in the area, should have foreseen that some object might come in contact with or in close proximity to the power line; also, that Florida Power was negligent in maintaining uninsulated power lines so dangerously close to the ground and in failing to warn Taylor of the danger of bringing objects into contact with those wires. Florida Power denied all material allegations of the Taylors' complaint and asserted affirmative defenses.
Florida Power brought its third party complaint against the Canal Authority and Diversacon on the theory that should it be found liable, it would be entitled to contribution[1] and alternatively, since its negligence would be categorized as passive rather than active, it would be entitled to indemnity from both parties as active tortfeasors. Florida Power's claim of indemnity against Canal Authority was additionally based on a provision in a grant of an easement from it to Canal Authority.
The accident occurred during construction of the Cross Florida Barge Canal. The Canal Authority acquired the land where the accident occurred from Florida Power in 1968, by a conveyance wherein Florida Power retained an easement on, over, under, and across a 100-foot strip of land to maintain its electrical transmission lines. The coveyance was subject to a restriction that any roads built under its *690 power lines would be no closer than 25 feet to those lines. The Canal Authority later made the lands available to the U.S. Army Corps of Engineers which in turn contracted with predecessors of Diversacon[2] to construct the Inglis Spillway and Dam in accordance with the Corps' plan. Sometime between September 1971, and April 1972, under Diversacon's supervision, the road under Florida Power's transmission lines was elevated a distance of six feet in violation of the deed restrictions.
In one of the summary judgments granted against Florida Power the trial judge reasoned:
"... Florida Power Corporation's liability to the plaintiff, if any, is based on `active negligence' and not `passive negligence' which would entitle it to indemnity or contribution from joint tortfeasors."
It is now well settled that on a motion for summary judgment the burden of proof is on the moving party to show the absence of any genuine issue as to any material fact and all doubts and inferences must be resolved against the movant. Holl v. Talcott, Fla. 1966, 191 So.2d 40; Booth v. Mary Carter Paint Co., Fla.App.2d 1966, 182 So.2d 292. Given that rule applicable to summary judgments, we proceed to the principles of law involved here.

INDEMNITY
Formerly, under Florida law, one of two joint tortfeasors was generally not entitled to recover any reimbursement from the other. However, there developed an exception to this rule, based on the principle of indemnity. The principles of law governing indemnity are set forth in Stuart v. Hertz Corporation, Fla.App.4th 1974, 302 So.2d 187. In discussing the subject in Stuart, as applied factually to the controversy before us, Judge Mager points out that the right to indenmity may arise from either (a) an express contract, or (b) the existence and violation of a duty as between tortfeasors.
One common example of the principle which allows indemnity to tortfeasor is where an automobile owner is held vicariously liable for damages caused by a negligent driver of his vehicle. Fincher Motor Sales, Inc. v. Larkin, Fla.App.3d 1963, 156 So.2d 672; Hutchins v. Campbell, Inc., Fla.App.2d 1960, 123 So.2d 273. But, the rule has applicability beyond the context of vicarious liability. Thus, when the active or primary negligence of one tortfeasor and the passive or secondary negligence of another combine to proximately cause an injury to a third party, the passively negligent tortfeasor becomes entitled to indemnity from the actively negligent one. Maybarduk v. Bustamante, Fla.App.4th 1974, 294 So.2d 374.
Generally, the mere failure to discover an unsafe or dangerous condition created by a joint tortfeasor constitutes passive negligence and does not bar indemnity against the tortfeasor whose active or primary negligence created the dangerous condition. See Restatement of Law of Restitution, § 95; Kansas City Southern Railway Co. v. Payway Feed Mills, Inc., Mo. 1960, 338 S.W.2d 1; United Airlines, Inc. v. Wiener, 9th Cir.1964, 335 F.2d 379; Booth-Kelly Lumber Co. v. Southern Pacific Co., 9th Cir.1950, 183 F.2d 902; Chicago Great Western Railroad Co. v. Casura, 8th Cir.1956, 234 F.2d 441; Cobb v. Southern Pacific Co., 1967, 251 Cal. App.2d 929, 59 Cal. Rptr. 916. This principle was discussed in Winn-Dixie, Inc. v. Fellows, Fla.App. 1st 1963, 153 So.2d 45, as modified, Winn-Dixie Stores, Inc. v. Pepsi-Cola Bottling Co. of Jacksonville, Inc., Fla. 1964, 160 So.2d 102, where one of Winn-Dixie's customers was injured when a carton of beverages fell to the floor as a result of a negligently *691 constructed display. There the plaintiff recovered verdicts against both Winn-Dixie and Pepsi-Cola. Winn-Dixie sought indemnity from Pepsi-Cola contending its (Winn-Dixie's) liability to the plaintiff resulted only from its secondary or passive negligence in breaching a duty which it owed to the plaintiff to discover and correct the dangerous display; that Pepsi-Cola which constructed the display was the active tortfeasor whose negligence was primarily responsible for the plaintiff's damages. The court there held that if the proof established Winn-Dixie was without primary fault; i.e., without actual as distinguished from constructive knowledge that the display was built in a dangerous and hazardous manner, then Winn-Dixie would be a passive tortfeasor entitled to indemnity from Pepsi-Cola. In that case Winn-Dixie was held to be actively negligent and not entitled to indemnity.
In the case now before us, there is a dispute as to when Florida Power first gained actual knowledge that Diversacon had raised the road. It is undisputed, however, that the day before Taylor's accident, Florida Power had been notified that the boom on a truck traveling on this elevated road had come into contact with one of its power lines. Florida Power then deemed it advisable to measure the height of the lines and sent someone from its company to check on this. Mr. Penny, its engineer, discussed the problem with Taylor on that same day. The following day Taylor extended his surveyor's rod to accomplish the needed measurement. The proof is in conflict as to the method Taylor was requested or directed to employ to measure the height of the lines from ground level. Florida Power contended he was to calculate the distance by triangulation; however, it is undisputed that Taylor extended his surveyor's rod upward and made a direct measurement. When the rod came into the vicinity of the power lines, the current arced and caused injuries to Taylor.
Florida Power argues that Taylor's injuries were the direct result of Diversacon's active negligence in elevating the road and that Florida Power's negligence, if any, was in its mere failure to discover this dangerous condition which, it argues, was as most passive. Moreover, Florida Power contends that the Canal Authority had a contractual obligation with it not to elevate the road and that this contractual provision, standing alone, gives it a right of indemnity against the Canal Authority. Diversacon, on the other hand, contends the trial judge correctly found that Florida Power's negligence was active as a matter of law in that Florida Power permitted a lay person to deal with high voltage electric wires, a function which should have been accomplished only by one of its own trained technicians. This negligence, Diversacon contends, was the proximate cause of the injury to Taylor. Florida Power counters by stating that there is a material issue as to whether Tayor was instructed to measure directly or indirectly and this precluded entry of a summary judgment. Conflict on the point is patent.
If the trier of fact eventually determines that Florida Power was negligent in that it had actual notice of the road elevation and failed to act timely in a reasonable manner; or if the facts are resolved against it for seeking or permitting Taylor to perform measurements in an unsafe manner, then it would appear that Florida Power would be an actively rather than a passively negligent actor and would be denied indemnity. Florida Power & Light Co. v. General Safety Equipment Co., Fla.App.3d 1968, 213 So.2d 486.
If on the contrary, it is determined that once it received actual notice of the road construction, Florida Power moved promptly to correct the situation and thereafter was not negligent in respect to Taylor's measurements of the height of its power lines, then Florida Power's negligence, if any, would appear to be only passive. The plaintiff's complaint alleges:
"(5) The defendant negligently constructed, maintained and operated its electrical *692 power lines hereinabove referred to in that said power lines were unreasonably and dangerously close to the ground... ."
If Florida Power was without actual knowledge of Diversacon's activity in raising the road under the lines, any negligence of the power company in failing to earlier discover that dangerous condition would be only passive negligence under Winn-Dixie, supra. Of course, to recover on the basis of the active-passive theory of indemnity, it would be necessary for the fact finder to conclude that Diversacon and/or Canal Authority were active tortfeasors.
We are not necessarily holding that the allegations of Paragraph 5, quoted above, are sufficient to hold Florida Power Company liable to the plaintiff under the circumstances of this case. Rather, we hold only that some allegations in the complaint give rise to inferences that Florida Power's negligence, if any, could have been passive only. In any event, this possibility has not been conclusively eliminated by the proof submitted to the trial judge. Therefore, it was improper to grant summary judgment against Florida Power on its third party complaint against Diversacon and the Canal Authority. See Peoples Gas System, Inc. v. B & P Restaurant Corp., Fla.App.3d 1973, 271 So.2d 804.
We next turn to the power company's argument that the covenant in the deed to the Canal Authority furnishes an independent basis for indemnity against the Canal Authority.
We are in agreement that violation of such a contractual obligation can be the basis for indemnity. See Seaboard Air Line Ry. v. American District Electric Protective Co., 1932, 106 Fla. 330, 143 So. 316; Westinghouse Electric Corp. v. J.C. Penny Co., Fla.App.1st 1964, 166 So.2d 211; Suwannee Valley Electric Co-operative, Inc. v. Live Oak, Perry, & Gulf R. Co., Fla. 1954, 73 So.2d 820. However, in none of these cases was an active tortfeasor allowed to recover on a theory of indemnity by virtue of breach of a contractual duty. In 41 Am.Jur.2d, Indemnity, § 17, it is said that indemnity will not be permitted, even when based on an agreement, to one who has acquiesced in a dangerous condition through long continued awareness.
We conclude that if the power company is found negligent, but only passively so, and it is established that the violation of the covenant by the Canal Authority proximately caused Taylor's injuries, then the power company would be entitled to indemnity from the Canal Authority. However, if the evidence establishes the power company to have been an actively negligent tortfeasor, whether through actual knowledge of and acquiescence in the dangerous condition or otherwise, then the power company would not be entitled to indemnity on this basis.

CONTRIBUTION
Florida Power also sought contribution from the Canal Authority as an alleged joint tortfeasor. Historically, no right of contribution has existed between joint tortfeasors. Seaboard Air Line Ry. Co. v. American District Electric Protective Co., supra. However, the right of one tortfeasor to contribution from a joint tortfeasor is now controlled by the "Uniform Contribution Among Tortfeasors Act," Fla. Stat. § 768.31, a statute enacted by the Legislature in 1975. The statute applies to all causes of action, such as this one, pending on June 13, 1975, and provides in § 2(a) thereof:
"Except as otherwise provided in this act, where two or more persons become jointly liable or severally liable in tort for the same injury to persons or property, or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them."
At this posture of the case, there are sufficient allegations of negligence *693 against the Canal Authority to show a right of contribution in favor of Florida Power and in view of § 768.31, supra, Florida Power's third party complaint for contribution against the Canal Authority should be reinstated. See also, Lincenberg v. Issen, Fla. 1975, 318 So.2d 386, and Leesburg Hospital Association v. Carter, Fla.App.2d 1975, 321 So.2d 433.
Accordingly, we reverse and reinstate Florida Power's third party complaint and remand for further proceedings consistent with this opinion.
BOARDMAN, Acting C.J., and GRIMES, J., concur.
NOTES
[1] Florida Power withdrew its claim for contribution against Diversacon in the trial court prior to entry of the summary judgment.
[2] Diversacon assumed all contractual obligations and responsibilities of its predecessors, Gregg, Gibson & Gregg, herein.