THE CHICAGO CITY RAILWAY COMPANY

*v.*

MARY SAXBY.

*Opinion filed December 22, 1904.*

1. DAMAGES—*effect where plaintiff's physicians use improper treatment.* If a person injured uses reasonable care to employ physicians of ordinary skill and experience to treat her injuries, the law regards the injury resulting from the mistake of the physicians or from the failure of the means employed to effect the cure as a part of the immediate and direct damages flowing from the injury.

2. SAME—*effect where organic tendency to disease is developed by injury.* The fact that an injured person has an organic tendency to tuberculosis, which disease is developed in her knee by the injury to it or by the treatment employed by ordinarily skillful and experienced physicians to cure the injury, does not necessarily show that the diseased condition of the knee is not a direct damage naturally flowing from the injury.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. ROBERT B. SHIRLEY, Judge, presiding.

This was an action on the case brought by the appellee in the circuit court of Cook county, against the appellant, to recover damages for an injury to her person claimed to have been sustained by her in consequence of the car of appellant, upon which she was a passenger, being suddenly started as she was about to leave the car and before she had time to alight upon the street, whereby she was thrown down and injured. The jury returned a verdict in her favor for $16,-000, and upon her remitting $6000 of that amount the court overruled a motion for a new trial and entered judgment upon the verdict for $10,000, which judgment has been affirmed, upon appeal, by the Appellate Court for the First District, and a further appeal has been prosecuted to this court.

Two reasons are urged in this court as grounds for reversal: First, that the verdict is not justified by the evi-

dence; second, the court admitted improper evidence on behalf of the appellee.

William J. Hynes, and Watson J. Ferry, (Mason B. Starring, of counsel,) for appellant.

B. B. Davis, and Walker & Williams, for appellee.

Mr. Justice Hand delivered the opinion of the court:

At the close of the plaintiff's evidence, and again at the close of all the evidence, the defendant requested the court to instruct the jury to return a verdict in its favor, which the court declined to do, and the action of the court in that regard has been assigned as error.

On the evening of August 16, 1899, appellee was a passenger upon one of appellant's cars going south upon Indiana avenue, in the city of Chicago. The evidence introduced on her behalf tended to show that as the car approached Forty-fifth street she signaled the conductor to stop the car at that street; that the car stopped at the intersection of Indiana avenue and Forty-fifth street; that she started to leave the car, but before she had time to alight upon the ground, and while she stood upon the running-board upon the west side of the car, the car was suddenly started without warning to her and she was violently thrown from the car upon the street, where she struck upon her left side and was injured. At the time of the accident the appellee was sixty years of age and was in good health. From the time of the injury to the date of the trial, which occurred more than two years after the accident, she had left her room but once, and at the time of the trial was unable to sit up but a portion of the time, or to walk; that the injury was to her left leg; that the neck of the femur bone of that leg was fractured, and tuberculosis had developed in the left knee, and the knee-joint of that leg had become ankylosed.

The main contention of the appellant is that the diseased condition of the knee was caused by the leg being improperly

treated by the physicians employed by the appellee by placing thereon splints and plaster casts and attaching to the foot pulleys and weights, and that tuberculosis, which, it is claimed, was organic with her, by reason of such imperfect treatment was developed in the knee, and it is urged that by reason of those facts the diseased condition of the knee was not the natural and ordinary consequence of the injury received by appellee at the time she fell upon the street, and that she ought not to be permitted to recover damages from the appellant for the conditions which were shown to exist in the knee. The appellee, immediately after the injury, was carried to her apartment and was treated by Drs. Freund and Farnum, and Drs. Fenger and Andrews were called in consultation,—Dr. Freund was called within a few minutes after the accident,—all of whom were physicians practicing their profession in the city of Chicago. She was also cared for by a trained nurse during the first eighteen months succeeding her injury, and at the time of the trial had in her employ a young woman who had devoted her entire time to her care since the trained nurse left her employ. Drs. Halstead and Findley, also physicians in practice in the city of Chicago, were called as experts and approved the treatment applied to the appellee by her attending physicians.

It was the duty of the appellee to use reasonable care to effect a speedy and complete cure of the injury which she sustained by being thrown upon the street from appellant's car, and to that end she was required to exercise reasonable care to employ physicians of ordinary skill and experience to treat her and other means to effect a cure of her injuries. She was not, however, required to employ the highest medical skill which might be found. All the law required was that she exercise such prudence as men and women of ordinary judgment, under like circumstances, would exercise in the choice of physicians and the means to be used to effect a recovery. She was not an insurer, bound to act at her peril, and if she exercised reasonable care in selecting her physi-

cians and in the employ of other means for her recovery, if her physicians made a mistake in the treatment applied by them to her or the means 'employed failed to effect a cure, then she may recover for the entire injury which she has sustained, as the law (if the injured person uses ordinary care in selecting a physician and in the employment of other means to effect a cure) regards an injury resulting from the mistake of a physician or from a failure of the means employed to effect a cure as a part of the immediate and direct damages which naturally flow from the injury.

In *Pullman Palace Car Co.* v. *Bluhm,* 109 Ill. 20, which was a personal injury case, the court permitted the plaintiff to prove that the bones of his arm which were broken had not healed but that the same had formed a false joint. On page 25 the court said: "If appellee exercised ordinary care to keep the parts together and used ordinary care in the selection of surgeons and doctors, and nurses, if needed, and employed those of ordinary skill and care in their profession, and still, by some unskillful or negligent act of such nurses or doctors or surgeons, the parts became separated and the false joint was the result, appellant, if responsible for the breaking of the arm, ought to answer for the injury in the false joint. The appellee, when injured, was bound by law to use ordinary care to render the injury no greater than necessary. It was therefore his duty to employ such surgeons and nurses as ordinary prudence in his situation required, and to use ordinary judgment and care in doing so, and to select only such as were of at least ordinary skill and care in their profession. But the law does not make him an insurer, in such case, that such surgeons or doctors or nurses will be guilty of no negligence, error in judgment or want of care. The liability to mistakes in curing is *incident* to a broken arm, and where such mistakes occur, (the injured party using ordinary care,) the injury resulting from such mistakes is properly regarded as part of the immediate and direct damages resulting from the breaking of the arm."

In *Collins* v. *City of Council Bluffs,* 32 Iowa, 324, the court instructed the jury, if in the selection of a physician and in the use of other means for effecting a cure the plaintiff used reasonable and ordinary care her damages should not be diminished, notwithstanding her suffering might have been alleviated and her condition improved.   The court, in discussing this instruction, said (p. 329) : "This instruction unquestionably announces a correct rule.   All that the law required of plaintiff was the exercise of her judgment and the care which men of ordinary prudence, under like circumstances, would exercise in the choice of physicians and the means to be used to effect her recovery.   She was not required to employ the best surgical skill and the means best adapted to heal her injuries.   These may not have. been within her reach;   and while she may have possessed prudence, and reason even, in the highest degree possessed by men who are unlearned in medicine and surgery, she still may have been unable to choose the best means for her recovery.   But she was required to exercise only the judgment and care which men and women in her condition are ordinarily capable of exercising. · This is the purpose of the instruction."

The evidence fails to establish with any degree of certainty that the appellee had in her system an organic tendency to tuberculosis,—at least at the time of the injury it was not developed in any form and prior to the injury her left knee was in a healthy condition;  and at least two of the physicians called by her stated, in reply to hypothetical questions submitted to them, that in their opinions the conditions found in her left knee were due to an external injury, and the appellee testified,—and she was corroborated by Dr. Freund,—that her left leg was swollen and painful from the time of the injury.   If, however, it be conceded that she had tuberculosis in her system and that the same was developed in the knee by reason of the injury thereto or from the treatment she received in the endeavors. made to effect a cure of

the fracture of the neck of the femur, we think it cannot be said that the diseased condition of the knee was not a consequence which naturally and ordinarily might follow as a result of the injury of appellee caused by the negligent act of appellant.

In *Stewart* v. *City of Ripon,* 38 Wis. 584, an action was brought to recover damages alleged to have been sustained by the plaintiff from a fall upon a defective sidewalk. The contention was made, on behalf of the city, that the diseased condition of the arm of the plaintiff was due to the fact that he had in his system an organic tendency to scrofula, and that such tendency was the proximate cause of the necrosis of the bone of his arm, and not the injury which he sustained by falling upon the sidewalk. The court held that although the diseased condition of plaintiff's arm might not have occurred but for his organic tendency to scrofula, still, if the disease was developed by the injury and a cure was retarded or prevented by reason of the presence of scrofula in the plaintiff's system, the defendant's negligence was the proximate cause of the whole injury. And in *Baltimore City Railway Co.* v. *Kemp,* 61 Md. 74, it was said: "It is the common observation of all that the effect of personal physical injuries depends much upon the peculiar conditions and tendencies of the person injured, and what may produce but slight and uninjurious consequences in one case may produce consequences of the most serious and distressing character in another; and this being so, a wrongdoer is not permitted to relieve himself from responsibility for the consequences of his act by showing that the injury would have been of less severity if it had been inflicted upon any one else of a large majority of the human family."

Mr. Thompson, in his Commentaries on the Law of Negligence, (vol. 1, sec. 150, p. 145,) says: "The duty of care and of abstaining from injuring another applies to the sick, the weak and the infirm, as well as to the strong and healthy. When this duty is violated the measure of damages is the

injury which results, though this injury may not have followed but for the peculiar physical condition of the person injured, although it may have been thereby aggravated." In section 151 of the same work (p. 147) it is said: "It may be stated, generally, that if the negligence of A produces a hurt to B which aggravates a pre-existing tendency to disease in B, the negligence, and not the disease, is deemed, in law, the proximate cause of the injury."

The author of the article on Contributory Negligence in the American and English Encyclopædia of Law (vol. 7,—2d ed.—p. 388,) says: "In cases where the defendant's negligence caused a disease, developed a latent tendency to disease, aggravated a prior disease or led in immediate sequence to disease, the defendant must respond in damages for such part of the diseased condition as his negligence caused; and if there can be no apportionment, or if it cannot be said that the disease would have existed apart from the injury inflicted by the defendant, then the defendant is responsible for the diseased condition."

The court instructed the jury upon behalf of the defendant: "The jury are instructed that even though the defendant were liable for the accident in question, still you are instructed that she could not recover in this case for any damage which was not the natural and necessary result of the accident and injury then sustained, if you find, from the evidence, she sustained injury at the time of the accident; and if you find, from the evidence, that the plaintiff has now, or has had, any other disability resulting from conditions which existed in the plaintiff prior to said accident and of which the accident in question was not the proximate cause, then you are not permitted, by law, to allow her anything for such disability, and should not do so from motives of sympathy or any other motive."

The question was therefore submitted to the jury whether the injuries from which the appellee was suffering were the results of the diseased condition of her system which existed

prior to her injury, or were the direct and immediate result of the appellee being thrown from the car upon the ground by the negligent act of the appellant, and they were told if her injuries were the result of disabilities with which she had been afflicted prior to the injury, she could not recover damages by reason of such disabilities. The question whether or not the injuries of the appellee were the result of the negligence of the appellant or resulted from disease or a tendency to disease was a question of fact, and as there was evidence in the record which fairly tended to show that the injuries from which the appellee was suffering were the result of her being thrown from the appellant's car, we are of the opinion the trial court did not err in declining to take the case from the jury, even though the injuries of the appellee were aggravated by the fact that she had in her system an organic tendency to tuberculosis, which was developed by the injury or the treatment applied to the injury by the physicians and which retarded or prevented a complete recovery.

Numerous exceptions were taken upon the trial to the rulings of the court upon questions pertaining to the evidence. We have examined the questions thus raised, and are of the opinion that the trial court in that regard in no instance committed reversible error. For example, the appellee, in detailing, upon her direct examination, the result of the injury occasioned to her person by the fall, said: "I was upset in every particular; every function of my body, I think, was out of order from the shock, and I suffered terribly in every way." This statement of the witness was unimportant. She had already testified fully as to the manner in which she fell from the car and the effect of the fall, and while the statement was in a certain sense the expression of an opinion, it was in a broader sense the statement of a fact, —that is, the condition her person was in as a result of the injury. In any event, in the opinion of the court the refusal to strike out the answer should not cause a reversal of the case.

While Dr. Davis, who had treated the appellee, was upon the stand, he was asked, "What is the fact, Doctor, as to tuberculosis being occasioned by trauma or violence?" to which he replied: "Tuberculosis may be caused to center at the point of trauma; a great many instances are known where it occurs." It is urged there was no evidence upon which to base the question, as the evidence failed to show the left knee of appellee was injured at the time of the accident. The evidence showed the appellee was thrown from the car and struck upon the ground upon her left side; that prior to her injury she was in good health, and that she sustained an injury to the hip which subsequently involved the knee. While upon the stand she testified: "I suffered excruciating pain all the time in my hip and in my back—in my hip principally, but my limb was swollen and painful." Dr. Freund also stated: "The first time I discovered any visible evidence of anything the matter with the knee was the same night of the injury." He also stated: "During the period described the knee was always very painful—from the time of the injury." While he qualified this statement upon cross-examination, we think it cannot be said that there is no evidence that the knee was injured at the time of the accident. The court did not err in permitting the question to be answered.

We do not deem it necessary to take up separately and consider all of the objections to the court's ruling upon the evidence which have been raised and discussed in the briefs. Suffice it to say that they are technical in the extreme, and in our judgment had no perceptible effect upon the verdict and were not prejudicial to the appellant.

Finding no reversible error in this record the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*