(No. 45200.
JAMES GERTZ, a minor, v. VERN A. CAMPBELL, SR., Appellee.—(Dr. H. M. Snyder, Appellant.)

*Opinion filed September 25, 1973.*

UNDERWOOD, C.J., and RYAN, J., specially concurring.

DIVER, RIDGE, BRYDGES and BOLLMAN, of Waukegan (DONALD RIDGE and ROBERT M. BOLLMAN, of counsel), for appellant.

SNYDER, CLARKE, DALZIEL, HOLMQUIST & JOHNSON, of Waukegan (JULIAN JOHNSON, of counsel), for appellee.

MR. JUSTICE WARD delivered the opinion of the court:

James Gertz, a minor, by his mother, Ann Gertz, filed a complaint in the circuit court of Lake County alleging that Vern A. Campbell, Sr., the defendant and the third-party plaintiff, injured James Gertz when he negligently drove his auto against Gertz, who was standing on the shoulder of a road. Campbell later filed a third-party action against Dr. H. M. Snyder, the physician who treated Gertz, alleging malpractice in his treatment of Gertz and seeking indemnity for any damages which might be assessed against Campbell under Gertz's complaint which were attributable to the malpractice of Dr. Snyder. The trial court dismissed the third-party complaint on the

motion of Dr. Snyder, but that judgment was reversed by the appellate court, that court holding that Campbell had stated a cognizable claim for "equitable apportionment." (4 Ill. App. 3d 806.) We granted the third-party defendant's (Snyder's) petition for leave to appeal.

The third-party complaint against Dr. Snyder alleged that after Gertz sustained the injuries from Campbell's automobile, Gertz was admitted to the emergency room of the McHenry Hospital in McHenry, where he was examined by Dr. Snyder.

The complaint alleged in detail what the examinations of the plaintiff disclosed and charged that Gertz's condition upon his admission called for immediate surgery "to repair the occluded artery and veins in the plaintiff's right leg." It charged Dr. Snyder was negligent in waiting 17 hours to perform this surgery, and that as a proximate result of this delay "the tissues in the lower portion of the plaintiff's right leg became necrotic and it thereby became necessary to amputate the plaintiff's right leg between the knee and the ankle." It further alleged that "but for the said failure and neglect of Dr. Snyder, the tissue in the plaintiff's right leg would not have become necrotic with the resultant amputation, and the plaintiff could reasonably have anticipated a normal recovery from a broken leg."

Campbell declared that he would be liable for the aggravation of Gertz's injury caused by the negligence of Dr. Snyder, and he asked that he be given, should he be found liable to Gertz, "indemnity and judgment against Dr. Snyder for the amount of damages caused to the plaintiff [Gertz] as a result of the new injury or aggravation of the plaintiff's existing injuries caused by the neglect and failure of Dr. Snyder."

The third-party defendant, Snyder, contends that the appellate court erred in reversing the trial court's dismissal. If Campbell's complaint is to be regarded as one for indemnity, dismissal was proper, he says, because in Illinois indemnity may be had only where there is an

express or implied contract of indemnity, or where there exists a "qualitative distinction between the negligence of the two tortfeasors." (*Chicago & Illinois Midland Ry. Co. v. Evans Construction Co., 32 Ill.2d 600, 603.*) This qualitative distinction will be drawn only, Snyder argues: (1) where the indemnitee, though without fault himself, is required to respond in damages, as where a principal or employer is held for the negligence of his agent or employee, or (2) where the disparity in fault is so great that the indemnitor's negligence may be considered as active while that of the indemnitee may be said to have been only passive. Here, Snyder points out, there was of course no contract of indemnity, and the negligence of Campbell was certainly active and not passive.

Next, Snyder directs attention to the distinction to be drawn between indemnity and contribution. In *Suvada v. White Motor Co., 32 Ill.2d 612, 624,* we quoted, he notes, Prosser on Torts (3d ed. 1964) that: "There is an important distinction between contribution, which distributes the loss among the tort-feasors by requiring each to pay his proportionate share, and indemnity, which shifts the entire loss from one tort feasor who has been compelled to pay it to the shoulders of another who should bear it instead."

Pointing out that Campbell seeks recovery from him of only a portion of whatever judgment Gertz obtains against Campbell, Snyder argues that Campbell here is attempting to recover what is in reality contribution. There cannot be contribution between joint tortfeasors in Illinois, Snyder says, noting *Chicago & Illinois Midland Ry. Co. v. Evans Construction Co., 32 Ill.2d 600,* and therefore the trial court properly dismissed the third-party action if the complaint is considered as seeking contribution.

It is appropriate to observe that this case comes before us on the pleadings, and that "all facts well pleaded will be taken as true." *Suvada v. White Motor Co., 32 Ill.2d 612, 613.*

Campbell is seeking recovery from Snyder, not in the

total amount of the judgment Gertz might obtain against him but only "for the amount of damages caused to the plaintiff as a result of the injury or aggravation of the plaintiff's existing injuries caused by the neglect and failure of Dr. Snyder." Campbell, as the original tortfeasor, says he is liable not only for the damages resulting from his automobile striking Gertz, which he alleges to have been only those for a fractured leg, but also for the additional damages suffered by Gertz as a result of Dr. Snyder's negligent failure to perform immediate surgery, which added damages Campbell alleges to be those for the amputation of Gertz's leg between the knee and the ankle. Thus, Campbell claims from Dr. Snyder the amount of damages to be awarded the plaintiff attributable to the amputation of his leg, which he says was caused by an independent negligence of Snyder.

Considering the claims of Campbell's complaint it is obvious that what Campbell sought here was not contribution or indemnity in the traditional form. He did not ask that Dr. Snyder be required to share the whole burden of the plaintiff's recovery nor did he ask to be indemnified to the extent of the entire recovery by the plaintiff. He did, however, ask that he be indemnified for the entire amount of the damages assignable to Snyder's fault.

We would observe that Campbell correctly states he is to be liable to the plaintiff for the negligence of Snyder as well as his own. In this State, and generally, a person injured through another's negligence can recover from the original tortfeasor not only for the original injury but for any aggravation of the injury caused by a physician's malpractice, assuming that there was no want of ordinary care by the injured in the selection of the physician. *Chicago City Ry. Co. v. Saxby, 213 Ill. 274;* see also, Prosser, Handbook of the Law of Torts (4th ed. 1971), par. 61.

Next it should be said, contrary to one of the positions taken by Snyder, that the appellate court

properly considered that Campbell and Dr. Snyder were not joint tortfeasors and thus our holdings prohibiting contribution between joint tortfeasors have no applicability. There was no concert in the conduct of Campbell and Dr. Snyder. *Inter alia,* neither had control over the acts of the other; the plaintiff's cause of action is based on claimed violations of different duties owed the plaintiff by the original tortfeasor and the physician. The wrongful conduct and the injuries sustained were at different times. The physician in a case as here is not liable for the negligence of the original tortfeasor. Other courts, too, have concluded that under circumstances as here the original tortfeasor and the one charged with malpractice are not to be deemed joint tortfeasors. *Fisher v. Milwaukee Electric Ry. & Light Co. (1920), 173 Wis. 57, 180 N.W. 269; Herrero v. Atkinson (1964), 227 Cal. App. 2d 69, 38 Cal. Rptr. 490;* see also, Prosser, Joint Torts and Several Liability, 25 Cal. L. Rev. 413 (1937).

Turning to Snyder's other contention, we do not consider that the right to indemnity must be unalterably restricted to the outlines he has described. The right should be capable of development to meet perceived requirements for just solutions in questions involving multiple tortfeasors. The historical aversion of courts to compare the fault of tortfeasors when contribution or indemnity has been sought has not prevented them from developing concepts which allowed indemnity when equity required. As an example, courts came to contrast the faults of an active tortfeasor with that of a passive one and to allow indemnity to the less culpable offender. And to illustrate there can and should be a continuing search for better solutions, the Court of Appeals of New York has recently supplanted this active-passive negligence criterion for indemnity with one founded on equitable principles. *Dole v. Dow Chemical Co. (1972), 30 N.Y.2d 143, 282 N.E.2d 288.*

Further, it should be pointed out that what Campbell

is seeking is not, on analysis, repugnant to the notion of indemnity. It is true he does not seek indemnity for the total recovery for the plaintiff, but he does seek indemnity for the total damages attributable to the fault of Snyder. He is not seeking to pass on any consequences of his own fault; he is saying that in justice he should not be required to bear the burden of consequences brought about solely by the malpractice.

This argument has been accepted and courts have recognized a right in the original tortfeasor to recover for the damages caused by the third party's malpractice. *Herrero v. Atkinson (1964), 227 Cal. App. 2d 69, 38 Cal. Rptr. 490; Clark v. Halstead (1949), 276 App. Div. 17, 93 N.Y.S.2d 49; Fisher v. Milwaukee Electric Ry. & Light Co. (1920), 173 Wis. 57, 180 N.W. 269.* And see generally, Annot., 8 A.L.R.3d 639.

In *Herrero* a motorist, Herrero, whose automobile had injured another, was allowed to bring a cross complaint for indemnity against persons allegedly responsible for the negligent administration of a blood transfusion during surgery performed on the victim of the auto accident. The court said: "The duty to indemnify may arise, and indemnity may be allowed in those fact situations where in equity and good conscience the burden of the judgment should be shifted from the shoulders of the person seeking indemnity to the one from whom indemnity is sought. The right depends upon the principle that everyone is responsible for the consequences of his own wrong, and if others have been compelled to pay damages which ought to have been paid by the wrongdoer, they may recover from him. Thus the determination of whether or not indemnity should be allowed must of necessity depend upon the facts of each case. (Leflar, Contribution and Indemnity Between Tortfeasors, 81 U. of Penn. L. Rev. 130, 153–156; Davis, Indemnity Between Negligent Tortfeasors: A Proposed Rationale, 37 Iowa L. Rev. 517.)" (227 Cal. App. 2d at 74, 38 Cal. Rptr. at 493.) The court then observed:

"Although the original negligence of Herrero may be regarded in law as a proximate cause of the damages flowing from the subsequent malpractice of the cross-defendants, and the plaintiff may recover a joint and several judgment against all who are found liable, there is no reason why the ultimate burden of damages should not be distributed among the various defendants, and each be made to bear that portion of the judgment which in equity and good conscience should be borne by him. Here, Herrero has had no part in the selection of any of the cross-defendant doctors or hospital. Nothing appears to indicate that he was even aware of the decedent's decision to submit to surgery. He has had no control or direction over the conduct of the cross-defendants and not the slightest opportunity to protect himself against their negligence, yet he is made liable in law for any damages caused by them. Under such circumstances it is equitable and just that indemnity be allowed Herrero, and that the cross-defendant doctors and hospital bear that portion of the damages caused by their own negligent conduct." 227 Cal. App. 2d at 75, 38 Cal. Rptr. at 493-494.

Considerations which led courts in *Herrero* and like cases to hold for the third-party plaintiff are present here to favor the equitable right to indemnity. Campbell is to be liable for the aggravation of the injuries suffered by Gertz because of Dr. Snyder's negligence simply because it is the policy of the law to hold him legally responsible for the additional damages which are said to have been foreseeable. He did not act in concert with Dr. Snyder. There is nothing to suggest that he had anything to do with the selection of the physician and certainly he had no control over Snyder's conduct. There was nothing he could have done to have prevented the independent negligence of the physician. If Campbell, who is to be liable for the malpractice of Dr. Snyder, is precluded from seeking indemnity from Snyder, the result will be a really indefensible enrichment of Snyder at the expense of

Campbell. (Leflar, Contribution and Indemnity Between Tortfeasors, 81 U. Pa. L. Rev. 130, 146-147 (1932).) We agree with the appellate court's holding that Campbell had a right to bring the action to be indemnified for the damages to the plaintiff attributable to the malpractice.

The appellate court, after holding that the trial court erred in dismissing the third-party action, declared: "We limit our rulings to the issue of the pleadings and of course express no opinion on ultimate results which would depend upon proofs and verdict. We do comment that the evidentiary hearing of the third-party action should properly be deferred until the contingent liability is established in the main suit, but that this is no basis for the contention made by the third-party defendant 'that Campbell wait until disposition of the principal action before filing any indemnity action.' " 4 Ill. App. 3d at 810.

We consider there was error in the appellate court's directing that the evidentiary hearing on the third-party action be deferred until the establishment of the liability of Campbell to Gertz in the principal action. While there have been holdings that the hearing on the third-party action should be held in abeyance as the appellate court ordered (*Harvan v. Arthur C. Trask Co., 47 Ill. App. 2d 403, 408*), the greater number of decisions hold that the question of deferring the hearing or not is a matter within the trial court's discretion. (*E.g., Wiegel v. One LaSalle Co., 75 Ill. App. 2d 272; Reynolds v. Illinois Bell Telephone Co., 51 Ill. App. 2d 334; Palmer v. Mitchell, 57 Ill. App. 2d 160.*) We consider this view is to be preferred. It permits the economy of a consolidated hearing when no improper prejudice will result and is consistent with the Civil Practice Act. Section 44(2) of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 44) provides: "The court may, in its discretion, order separate trial of any causes of action, counterclaim or third-party claim if it

cannot be conveniently disposed of with the other issues in the case." See also section 51 of the Act. Ill. Rev. Stat. 1971, ch. 110, par. 51.

That portion of the appellate court's judgment which ordered the deferment of the hearing on the third-party action accordingly is reversed. The balance of the judgment is affirmed.

*Reversed in part; affirmed in part.*

MR. CHIEF JUSTICE UNDERWOOD, specially concurring:

While I agree that Campbell's third-party complaint against Dr. Snyder states a cause of action, I am troubled by the court's reliance upon what I consider a potentially troublesome theory of "equitable apportionment" as the basis for that cause of action.

It seems to me of more than passing importance to denominate with precision the relationship between an original tortfeasor and a subsequently negligent physician, in determining their respective rights. First, it may be reiterated, as the court states, that they are not joint tortfeasors and thus recovery over by Campbell, whatever else it might be labeled, is not contribution. The law in Illinois is too well settled on that point to require further elaboration. Campbell is held to answer for the aggravation of injuries by Dr. Snyder, not because they acted in concert, but rather for the reason that the law regards such injuries as flowing naturally from the original harm. *E.g., Chicago City Ry. Co. v. Saxby (1904), 213 Ill. 274, 277.*

A remedy might be fashioned for Campbell under the doctrine of indemnity, as the court states, but, as the appellate court noted, a number of obstacles exist to its application here. At least as to tortfeasors, the Illinois view of indemnity has been restricted in scope and is available only in situations where there is "qualitative distinction

between the negligence of the two tortfeasors." (*Chicago and Illinois Midland Ry. Co. v. Evans Construction Co. (1965), 32 Ill.2d 600, 603.*) Further, its effect is to place the *entire* loss upon the tortfeasor whose conduct is more culpable; the sort of "apportionment" sought here is thus not cognizable under the Illinois approach to indemnification.

There is, however, an established category into which this cause of action readily fits, and I believe the law to be better stated as allowing the initial tortfeasor to become subrogated to the rights of the injured party as against the physician, who negligently exacerbates injuries following the original harm. This appears to be the view in at least New York and Wisconsin (*Clark v. Halstead (1949), 276 App. Div. 17, 93 N.Y.S.2d 49; Fisher v. Milwaukee Electric Ry. & Light Co. (1920), 173 Wis. 57, 180 N.W. 269*), and seems to me to most accurately depict the status of the parties. Moreover, it has the virtue of concisely describing the limits of the remedy available, damages to the extent that prior injuries were enlarged through malpractice, and it avoids judicial entanglement in the imprecision and uncertainty of "equitable apportionment." I would hold Campbell subrogated to the rights of Gertz as against Dr. Snyder.

MR. JUSTICE RYAN joins in this special concurrence.