STATE of Missouri ex rel. Ernest TARRASCH, Relator,

v.

The Honorable John C. CROW, Judge, Circuit Court of Greene County, Respondent.

No. 62472.

Supreme Court of Missouri, En Banc.

Oct. 13, 1981.

Glen A. Burkart, Springfield, for relator.

Rodney E. Loomer, Meredith B. Turner, Springfield, for respondent.

SEILER, Judge.

In this case, filed here after respondent indicated he would deny relator's motion for summary judgment in the underlying damage suit, wherein relator is one of the defendants, we are asked to make absolute our preliminary writ in prohibition. The case turns on the effect to be given a particular release between a plaintiff and one of multiple defendants on the right of the remaining non-settling defendant to bring a cross-claim or third party impleader for indemnity against the settling defendant. The cross-claim against relator is couched in terms of seeking full indemnity and alternatively in terms of comparative and relative fault responsibilities for the injuries suffered by plaintiff. In fact, as will be seen below, this particular cross-claim relates solely to full recovery of, or full reimbursement for, the damage caused by a successive tortfeasor which the original tortfeasor may have to pay the plaintiff by reason of the rule that the person causing the initial injury is liable for aggravation of the injury due to the subsequent negligence of the attending physician. The case comes before us on the pleadings, so we will as-

sume the various charges of negligence and damages are true.[1]

The action out of which this proceeding arose was brought on October 3, 1978 against relator Ernest Tarrasch and two other defendants, Ronnie McVay and Carl Durremann, by the plaintiff, Kenny Hemphill.[2] It is there alleged that on May 29, 1969, defendant McVay, a bus driver for the Lebanon, Missouri School District R–3, negligently left his school bus unattended after it broke down as a result of mechanical failure. While McVay was absent from the bus, defendant Durremann, then a nine-year-old fifth-grader, negligently threw a ruler which struck Hemphill, likewise a nine-year-old fifth-grader, in the eye. Relator Tarrasch, an ophthalmologist, also a defendant in the underlying suit, treated Hemphill's injured eye during the period May 29 through August 26, 1969. Hemphill charges relator with thirteen separate acts of medical malpractice, including relator's failure to remove the injured eye and to administer steroids which would have prevented sympathetic ophthalmia. It is alleged that as a result of the negligence of relator, sympathetic ophthalmia developed, causing blindness in the uninjured eye as well as the injured one.

Both McVay and Durremann filed cross-claims against relator, seeking determination of their respective relative fault and responsibility with respect to apportionment of plaintiff's damages among them.

Thereafter, on April 11, 1980, plaintiff Hemphill and relator executed an agreement and covenant not to sue in which relator paid Hemphill the limit of his malpractice insurance policy—$50,000—to be released from all claims and actions arising out of the incident of May 29, 1969.[3] McVay also settled with Hemphill for McVay's insurance policy limit of $100,000 and dismissed, with prejudice, his cross-claim against Tarrasch.

Plaintiff Hemphill's action against relator was then dismissed on July 22, 1980. Relator, pursuant to his agreement with Hemphill, then moved for summary judgment on the cross-claim filed against him by defendant Durremann. Attached to relator's motion and incorporated therein by reference was a copy of the April 11, 1980 agreement and covenant not to sue.

The trial judge issued a memorandum indicating his intention to deny relator's motion for summary judgment. Relator then instituted proceedings in prohibition to prevent the judge from issuing an order in accordance with his memorandum. According to the trial court's memorandum, the trial court did not believe that one tortfeasor (Tarrasch), by settling with plaintiff, could cut off another tortfeasor's (Durremann) right to obtain contribution from Tarrasch for the latter's proportionate share of the fault for plaintiff's injury. Durremann was not a party to the settlement between plaintiff and Tarrasch, and it was "logically unsound" to hold that Durremann's right "can be impaired thereby." Relator takes the contrary position that because he has obtained a release (covenant not to sue) from Hemphill with regard to any claims Hemphill may have against relator, defendant Durremann should not be permitted to proceed in a cross-claim against relator for contribution or indemnification.

1. Effective January 1, 1981, the person seeking relief in prohibition is to be designated as plaintiff, rather than relator, and the person against whom relief is sought is the defendant, rather than respondent. Rule 97.02. See also Rule 84.24. Inasmuch as the present action was filed under the old rule, however, we will refer to the parties in the style then in use—relator for the person bringing the action and respondent as the person sought to be prohibited.

2. In a one-count petition, Hemphill sued McVay and Durremann for $2,000,000 in damages and relator Tarrasch for damages "as are fair and reasonable." Rule 55.05 provides that in malpractice actions against a "health care provider" (here Dr. Tarrasch) no dollar amount is to be included in the demand; the prayer is to be for "such damages as are fair and reasonable."

3. The agreement contained a number of other provisions, as discussed later herein.

The arguments of both parties generally centered around the case of *Missouri Pacific Railroad v. Whitehead & Kales Co.*, 566 S.W.2d 466 (Mo. banc 1978) and whether or not it was applicable. In *Whitehead & Kales*, this court adopted "a system for the distribution of joint tort liability on the basis of relative fault." *Id.* at 474. That case took us out of an all or nothing indemnity system, based on active versus passive negligence, into a system of partial indemnity, based on relative fault, with each tortfeasor bearing his fair share. It established a method of working out partial indemnity or contribution based on relative fault between or among joint or concurrent tortfeasors.[4] *See Stephenson v. McClure*, 606 S.W.2d 208, 211 (Mo.App.1980). The end result is a sharing of damages between tortfeasors in proportion to fault. *Whitehead & Kales*, however, involved tortfeasors whose negligence was concurrent with respect to the whole harm suffered. In *Whitehead & Kales*, the facts were that all the harm to the plaintiff, Robert Sampson, occurred when he fell to the ground from the third deck of an auto rack. The fall came about by reason of Whitehead & Kales negligently designing and manufacturing the auto rack by reason of the omission of a portion of a foot rail on the third deck and Missouri Pacific negligently failing to warn plaintiff of the defect.

*Whitehead & Kales* did not have in it any aspect of medical malpractice by a *successive* tortfeasor for which the original tortfeasor could be held liable under the rule stated in the first paragraph of this opinion of extension of proximate cause to encompass the act of the doctor. In the instant case, we have the negligence of the bus driver in leaving the bus, followed by the students becoming unruly and one of them (Durremann) throwing the ruler and injuring plaintiff in one eye, causing damage thereto, and finally the subsequent malpractice of the doctor, resulting in loss of the other eye and causing additional damage, over and above that caused by the earlier acts and omissions of the bus driver (McVay) and the boy who threw the ruler (Durremann). Relator and Durremann are not true joint or concurrent tortfeasors. "Their acts were independent and successive, not joint and concurrent." *State ex*

---

4: A good statement of the development of the concept of joint tortfeasors and the difference between joint as opposed to concurrent tortfeasors appears in Note, The Mary Carter Agreement—Solving the Problems of Collusive Settlements in Joint Tort Actions, 47 S.Cal.L. Rev. 1393, 1393–94 (1974) as follows (footnotes omitted):

"At common law a 'joint tort' involved concerted action by two or more persons that resulted in the infliction of an injury. To be held 'joint tortfeasors' the person must have acted pursuant to a common scheme or design. Mere fortuitous involvement by several persons in the infliction of the tort was not sufficient to create joint liability. Because joint tortfeasors acted in concert, their liability was joint, and each tortfeasor was individually liable for the entire damages. The plaintiff, however, was limited to a single recovery and any amounts recovered from one tortfeasor were credited towards the liability of the remaining tortfeasors.

True joint torts are relatively rare compared to torts in which two or more persons act independently to cause a single injury. Such persons are said to have acted 'concurrently.' At common law concurrent tortfeasors had to be sued separately, and each could be held liable for the full amount of the plaintiff's injuries, subject, of course, to the rule that the plaintiff could recover but a single satisfaction. Liberalization of joinder rules in the United States, however, has permitted an injured party to join concurrent tortfeasors in a single action. As a result, the terms joint tort and joint tortfeasors have been applied to both concurrent and concerted action."

*See also* Germain, Remedies, 64 Ky.L.J. 233, 244 n.61 (1975), where the author writes:

"The term '*joint* tort-feasors' really should be reserved for situations involving concerted action or conspiracy between or among more than one tort-feasor, whereas the term '*concurrent* tort-feasor' is aptly applied to situations involving two or more tort-feasors whose wholly independent acts concurrently caused an indivisible injury. Because true concurrent tort-feasors are often 'joined' as defendants in modern lawsuits, the term '*joint* tort-feasors' has been used generally by courts, albeit somewhat incorrectly, in reference to both types of tort-feasors."

*rel. Normandy Orthopedics, Inc. v. Crandall,* 581 S.W.2d 829, 831 n. 1 (Mo. banc 1979). "[T]hey were not joint tortfeasors; they were acting independently of each other; their several wrongs were committed at different times; and the tort of each, being several when committed did not become joint because its consequences united with the consequences of the other." *Staehlin v. Hochdoerfer,* 235 S.W. 1060, 1062 (Mo.1921).

As said earlier, Durremann is seeking by his cross-claim against relator Tarrasch (the doctor) to obtain full indemnity for whatever portion of the damages which may be awarded plaintiff in the underlying damage suit against Durremann was due to relator's subsequent malpractice in the treatment of plaintiff. Relator, of course, cannot be liable for the original harm to plaintiff inflicted by Durremann, but only for the additional harm caused by his own negligence in treatment. *State ex rel. Baldwin v. Gaertner,* 613 S.W.2d 638, 640 (Mo. banc 1981). Under plaintiff's petition, Durremann and McVay, however, are liable to plaintiff Hemphill for the damages arising from both the original injury (throwing the ruler and injuring one eye) and the subsequent injury caused by relator's malpractice (loss of the uninjured eye, resulting in total blindness), *see Boehmer v. Boggiano,* 412 S.W.2d 103, 108 (Mo.1967); *Schumacher v. Leslie,* 360 Mo. 1238, 1245–46, 232 S.W.2d 913, 917 (banc 1950); *Staehlin v. Hochdoerfer,* 235 S.W. 1060, 1062 (Mo.1921); *State ex rel. Blond v. Stubbs,* 485 S.W.2d 152, 154 (Mo.App.1972); Restatement (Second) of Torts §§ 433A and 457 (1965); W. Prosser, Law of Torts § 52 at 321 (4th ed. 1971), the reasoning being that the action of the initial tortfeasor is deemed to be the proximate cause of the aggravation, and the subsequent negligent medical treatment is not considered to be an insulating intervening cause.

Although in such cases the initial tortfeasor is held liable for the total injuries to the plaintiff, the courts have held that as against the doctor (i. e., the successive tort-

feasor), the initial tortfeasor is not justly chargeable with the damages from the aggravation and is entitled to indemnity or contribution therefor.

The case of *Gertz v. Campbell,* 55 Ill.2d 84, 302 N.E.2d 40 (1973), is a good illustration, both as to the facts and reasoning of the court. Gertz filed suit against Campbell, alleging that Campbell negligently drove his automobile into Gertz, who was standing on the shoulder of the road. Campbell then filed a third party action against H. M. Snyder, the physician who treated Gertz, alleging malpractice in his treatment of Gertz and seeking indemnity for any damages which might be assessed against Campbell under Gertz's complaint which was attributable to the malpractice of Dr. Snyder. The third party complaint against the doctor alleged that after Gertz sustained the injuries from Campbell's automobile, Gertz was admitted to the emergency room of the hospital where he was examined by Snyder. It was alleged that Gertz's condition upon admission called for immediate surgery to repair certain arteries and veins in the right leg; that Snyder was negligent in waiting seventeen hours to perform the surgery and that as a result of the delay the tissues became necrotic and it thereby became necessary to amputate the leg between the knee and the ankle; that but for this failure or neglect by Dr. Snyder, the tissues would not have become necrotic and plaintiff could reasonably have anticipated a normal recovery from a broken leg. Campbell alleged that he would be liable for the aggravation of Gertz's injuries caused by Snyder's negligence and asked that he be given, should he be found liable to Gertz, indemnity and judgment against Snyder for the amount of damages caused Gertz as the result of the new injury or aggravation of plaintiff's existing injuries caused by the neglect and failure of Snyder.

The court described Campbell's claim as follows:

"Considering the claims of Campbell's complaint it is obvious that what Camp-

bell sought here was not contribution or indemnity in the traditional form. He did not ask that Dr. Snyder be required to share the whole burden of the plaintiff's recovery nor did he ask to be indemnified to the extent of the entire recovery by the plaintiff. He did, however, ask that he be indemnified for the entire amount of the damages assignable to Snyder's fault."

302 N.E.2d at 43. In the case at bar, Durremann is making the same sort of claim against relator Tarrasch.

The Illinois court concluded as follows:

"Considerations which led courts in *Herrero* [*Herrero v. Atkinson*, 227 Cal. App.2d 69, 38 Cal.Rptr. 490 (1964)] and like cases to hold for the third-party plaintiff are present here to favor the equitable right to indemnity. Campbell is to be liable for the aggravation of the injuries suffered by Gertz because of Dr. Snyder's negligence simply because it is the policy of the law to hold him legally responsible for the additional damages which are said to have been foreseeable. He did not act in concert with Dr. Snyder. There is nothing to suggest that he had anything to do with the selection of the physician and certainly he had no control over Snyder's conduct. There was nothing he could have done to have prevented the independent negligence of the physician. If Campbell, who is to be liable for the malpractice of Dr. Snyder, is precluded from seeking indemnity from Snyder, the result will be a really indefensible enrichment of Snyder at the expense of Campbell. (Leflar, Contribution and Indemnity Between Tortfeasors, 81 U.Pa.L.Rev. 130, 146–147 (1932). We agree with the appellate court's holding that Campbell had a right to bring the action to be indemnified for the damages to the plaintiff attributable to the malpractice."

*Id.* at 44–45.

The subject is also covered in Annot., Right of Tortfeasor Initially Causing Injury to Recover Indemnity or Contribution from Medical Attendant Causing New Injury or Aggravation Injury in Course of Treatment, 8 A.L.R.3d 639, 641, (1966), where it is said:

"The general principles governing indemnity and contribution, including the distinction between these two legal concepts, have been fully applied in cases in which a physician in the course of treatment either caused a new injury or aggravated an injury originally caused by the tortfeasor. Accordingly, all the cases seem to agree that a tortfeasor who initially caused an injury to plaintiff has the right to recover indemnity from a physician or other medical attendant who either caused a new injury or aggravated the existing injury in the course of his treatment, the courts applying various theories in support of the right of indemnity in particular cases."

Relator rests his argument that he should nevertheless be free from any cross-claims by Durremann on two propositions: (1) that the remedy of prejudgment apportionment of relative fault and contribution established in *Whitehead & Kales, supra,* is limited to claims for such relief between or among joint or concurrent tortfeasors and (2) that relator is entitled to the finality and protection of the settlement and release made with and obtained from plaintiff Hemphill and this could not be achieved if Durremann's cross-claim be allowed to proceed further against relator; that otherwise plaintiffs and defendants will be unable to settle cases and the public policy of encouraging settlements will be impaired.

As to the first ground, as seen from the authorities cited above, Durremann's cross-claim is not the sort of partial indemnity or contribution claim recognized in *Whitehead & Kales,* involving concurrent tortfeasors. It is instead a claim for complete indemnity or reimbursement with respect to whatever portion of plaintiff's damages was caused by the subsequent negligence of the successive tortfeasor Tarrasch, for which Durre-

mann is liable to plaintiff under the rule stated above. The fact that the partial indemnity remedy based on relative fault as authorized by *Whitehead & Kales* was for use among or between joint and concurrent tortfeasors does not mean an original tortfeasor cannot obtain indemnity or contribution from a successive tortfeasor in circumstances such as exist in the case at bar. The two situations are different—one pertains to partial indemnity based on relative fault; the other pertains to full indemnity by the original tortfeasor for that part of the damage which is due to the subsequent negligence of the successive tortfeasor. As seen from the authorities cited earlier, Durremann's rights against relator and relator's corresponding obligations or duties owed Durremann were not created by *Whitehead & Kales.* Those rights and duties antedated *Whitehead & Kales.* Therefore, the attempt in relator's first argument to defeat the present claim by saying it does not fit the *Whitehead & Kales* format does not meet the true issue.

As to relator's second ground, relator cites numerous Missouri cases for the proposition that compromise settlements are "favorites of the law." He cites out-of-state cases for the proposition that "a settling tortfeasor, as between him and a non-settling one, is entitled to the finality and protection of the settlement, including freedom from a claim for apportionment and contribution by the one or ones who did not settle."

None of these cases, however, involved the situation which we have here, where the tortfeasor who is claiming the benefit of the settlement is a successive tortfeasor whose subsequent negligence (in which the original tortfeasor did not participate) aggravates and increases the original injury and substantially enlarges the damages chargeable to the original tortfeasor.

Durremann did not participate in the Hemphill-relator covenant. Durremann may regard the $50,000 settlement as inadequate or collusive, considering the seriousness of the injury alleged by plaintiff to have been caused by relator's malpractice and assuming that the relator, a practicing physician, is solvent. According to the pleadings before us, at the time plaintiff and relator worked out their settlement both were aware that Durremann had filed a cross-claim against relator and was seeking to hold relator responsible for whatever damages Durremann had to pay because of relator's malpractice. Thus they were on notice as to Durremann's claim. Yet they proceeded to settle ex parte. Durremann had no voice in the matter, no opportunity to protest, no chance to be heard. Nor are Durremann's rights against relator in any way derived from the plaintiff, who has given a release to relator. Durremann's right against relator is a separate and distinct cause of action which will be complete when it is ascertained what sum of money is due from Durremann to plaintiff by reason of relator's negligence for which Durremann is liable. *See Jones v. Watermann S.S. Corp.,* 155 F.2d 992, 1001 (3d Cir. 1946). *Gertz v. Campbell, supra*; Annot., 8 A.L.R.3d 639, *supra,* and Restatement of Restitution § 76 at 331 (1937), stating as follows:

> "A person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity from the other . . . ."

As earlier stated, relator is one of the original defendants in the underlying damage suit and hence defendant Durremann's pleading against relator is a cross-claim against a co-party under Rule 55.32(f), rather than a third party petition under Rule 52.11. However, the principles under which relator could have been brought in by defendant Durremann as a third party defendant are useful in determining Durremann's rights against relator by way of cross-claim.

Rule 52.11(a) expressly authorizes a defendant to bring in as a third party defendant any person "not a party to the

action who is or may be liable to him for all or part of the plaintiff's claim against him." Likewise, a cross-claim under Rule 55.32(f) "may include a claim that the party against whom it is asserted is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant." In the case at bar, as shown by the authorities cited, relator Tarrasch is or may be liable to defendant Durremann for part of the plaintiff's claim against Durremann; i. e., that part of plaintiff's claim for damages brought about by relator's alleged negligent treatment of plaintiff's original injuries. The third party, relator Tarrasch, is liable as an indemnifier to that extent to the principal defendant and thus satisfies the test of the propriety of the third party impleader. *Hipp v. Kansas City Public Service Co.*, 241 Mo.App. 169, 173, 237 S.W.2d 928, 931 (1951). Under plaintiff's petition and Durremann's cross-claim against relator Tarrasch, there is a common liability to the plaintiff between defendant Durremann and relator Tarrasch for the damages caused by relator's malpractice, thereby providing a basis for a third party action or cross-claim against relator by Durremann, under the "is or may be liable" language quoted above. *State ex rel. Baldwin v. Gaertner, supra*, at 640. Therefore, unless barred by the agreement and covenant not to sue, Durremann is as well within his rights in asserting his cross-claim against relator as he would be in impleading relator and respondent judge would be well within his jurisdiction in denying relator's motion for summary judgment with respect to the cross-claim.[5]

It is true that compromise and settlement are important in the law and deserve to be fostered and promoted. It is argued that successive tortfeasors such as Tarrasch may have trouble buying their peace if they have to deal with the original tortfeasor as well as the plaintiff in making a settlement. But it is more important that the law not be a party to cutting off someone's rights or cause of action without first affording him notice and an opportunity to be heard, which has not been provided Durremann in this case. It is possible that the original injury to plaintiff's eye when Durremann threw the ruler was slight, constituting only a small portion, say, $5,000, of the total damage, and that the balance of the damage allegedly done to this plaintiff, who is now twenty-one years of age and has been made totally and permanently blind, was the result of relator's negligence, but for which Durremann would have to pay.[6] If we assume the jury returns a verdict of $1,000,000, that would be $995,000 in damages brought about by relator, less the $150,000 already paid, or a net of $845,000 which Durremann would have to pay on account of relator's negligence. Under the circumstances of this case, we cannot hold that the release which relator has from plaintiff operates to cut off Durremann's right to indemnity from relator. None of the cases relied on by relator so hold. To do so would be a gross violation of due process. We would be giving a conclusive effect to an agreement against a person who is neither a party thereto nor in privity or any other legal relationship with a party thereto.

5. In *State ex rel. Maryland Heights Concrete Contractors, Inc. v. Ferriss*, 588 S.W.2d 489 (Mo. banc 1979) we held that an employer could not be made a party or held for relative fault in a case where the employee had sued a third party for damages and the third party was attempting to hold the employer for part of the damage. In that case, however, there was no common liability to the plaintiff for damages with respect to the employer and the defendant. The employer was exempt from such a claim by virtue of the statute, § 287.120, RSMo 1978. Here, there is common liability to plaintiff on the part of relator and Durremann for whatever damage to plaintiff was due to rela-

tor's alleged malpractice. Relator contends the release lets him out, which is the question to be decided, but the point is that, under the pleadings, there was common liability to the plaintiff.

6. Of course, we do not know what the verdict of the jury will prove to be as to liability or damages and we have only the pleadings before us. But if there is liability and if it proves to be a fact that plaintiff is permanently blind, the damages assessed against Durremann, which would include the damages due to relator's malpractice, could be very substantial.

The agreement and covenant not to sue, on which relator relies, dated April 11, 1980 is seven legal pages in length, too long to be included here verbatim. It may be summarized as follows:

1. Relator agrees to pay $50,000 and plaintiff agrees to settle all claims against relator and to refrain from prosecuting his claim against relator, but reserves all claims against Durremann and McVay.

2. If the agreement and covenant does not constitute a bar to further claims against relator, then:

a. Plaintiff will hold harmless relator to the extent relator has to pay more than $50,000.

b. The $50,000 constitutes satisfaction of any obligation based on assessment of damages against relator based on relator's relative fault.

c. No judgment for contribution based on relative fault will be payable by relator.

It is also agreed that as security, plaintiff assigns to relator any judgment obtained against Durremann or McVay to the extent of relator's proportionate liability as determined by the court or jury in this or subsequent litigation.

Two specific examples are set forth in the release by way of illustration of the agreement. In one it is assumed that plaintiff gets a $1,000,000 verdict against defendant Durremann (the example names defendant McVay, but, of course, the same would be true as to Durremann in case the $1,000,000 verdict were against him). It is assumed further that the jury apportions fault fifty percent to Durremann and fifty percent to relator. The release then explains that plaintiff can collect $950,000 from Durremann, but, if so, Durremann under the jury's finding as to apportionment would be entitled to contribution of $450,000 from relator. In such event, plaintiff agrees that he will ask the court to use the indemnification agreement as an offset against the judgment against Durremann to the extent that Durremann is entitled to contribution

from relator. So when Durremann pays plaintiff $500,000, the total judgment which plaintiff has against Durremann and the judgment for contribution which Durremann has against relator would both be shown satisfied contemporaneously. The effect is that plaintiff agrees to satisfy any judgment he obtains against the non-settling defendant to the extent the settling tortfeasor has been released, which means that relator pays no more than the $50,000 called for by the covenant and agreement. The covenant and agreement does not keep Durremann from maintaining his cross-claim against relator, but it does protect relator from having to pay any additional amount.

The release also contains provisions not relevant to the issue before us, whereby relator foregoes any claims he has for his treatment of plaintiff and agrees to testify that the plaintiff's loss of sight is all directly attributable to the first injury.

The agreement and covenant not to sue is a convincing demonstration that permitting Durremann's cross-claim against relator to proceed will not prevent plaintiffs and defendants from settling cases. It has not done so here. The agreement protects the settling tortfeasor under the situation now confronting him. The parties have agreed how they will handle a cross-claim against relator for contribution or indemnity and have proceeded accordingly. The agreement can be seen as a form of third-party beneficiary contract of which the non-settling tortfeasor, here Durremann, is the beneficiary. By whatever name it is called, it provides for handling and disposal of the Durremann cross-claim without relator having to pay any additional sum and without sacrifice of Durremann's rights.

The trial bar, as shown by this example, is entirely capable of working out refined settlement techniques which can handle claims between and among original and successive tortfeasors, as well as the claims of the plaintiff. That is what was done here and relator is fully protected from having

to pay anything by reason of Durremann's cross-claim or whatever judgment may be entered upon it. At the same time Durremann remains jointly and severally liable for the entire judgment. Plaintiff, however, has agreed in advance to satisfy that portion of it which corresponds to the percentage of fault found attributable to relator.

Thus, what was attempted to be accomplished by the release is accomplished. Relator Tarrasch is fully and finally protected. He will not have to pay anything beyond the $50,000 originally paid. Likewise, defendant Durremann's right to indemnity or contribution against Tarrasch for whatever sum Durremann has to pay by reason of Tarrasch's negligent treatment of plaintiff, if so, is preserved, and the objection that otherwise the release would constitute an attempt to cut off the rights of a person who is not a party to it is removed. Plaintiff may gain or may lose, as is the nature of settlements, depending upon what happens between Durremann and relator on the cross-claim, but it is in accordance with his own choice of the method of disposing of the case. Plaintiff agrees he will petition the court to use the agreement to satisfy contemporaneously his own judgment against Durremann to the extent that Durremann is entitled to contribution from relator and also the judgment which Durremann has against relator for contribution. This offsetting procedure has the further advantage of saving time and circuity of action once liability and damages are ascertained. The agreement and covenant not to sue was entered into voluntarily, with able counsel on both sides, and there appears no reason why it should not be enforced. It impairs neither the rights of relator nor Durremann, and plaintiff is called upon to do no more than he agreed to do. It is a workable settlement arrangement.

■ As said at the outset, this is an action in prohibition. The question is whether respondent is usurping or acting in ex-cess of his jurisdiction in what he proposes to do. It is relator's burden to establish that respondent will usurp or act in excess of his jurisdiction in overruling relator's motion for summary judgment. Additionally, prohibition will not be granted except when usurpation of jurisdiction or an act in excess of jurisdiction is clearly evident. *State ex rel. Eggers v. Enright*, 609 S.W.2d 381, 383 (Mo. banc 1980); *State ex rel. McCarter v. Craig*, 328 S.W.2d 589, 591 (Mo. banc 1959).

We cannot say the trial court does not have jurisdiction to overrule the relator's motion for summary judgment on the facts before us. Under the agreement and covenant not to sue, which was before the trial court as part of the pleadings, the trial court is not exceeding his jurisdiction if he permits the cross-claim to proceed in light of the agreement reached by relator and plaintiff relative to the disposition to be made of such claims against relator.

The preliminary writ is ordered quashed.

MORGAN, HIGGINS and BARDGETT, JJ., concur.

DONNELLY, C. J., and WELLIVER, J., concur in result.

RENDLEN, J., dissents in separate dissenting opinion filed.

RENDLEN, Judge, dissenting.

Plaintiff brought his action for personal injuries against three defendants whose successive alleged acts of negligence combined to produce permanent blindness in both eyes.

McVay (Defendant No. 1), a bus driver for the Lebanon, Missouri School District No. R-3, is charged with negligently leaving his school bus unattended on May 29, 1969, when one of the young students aboard (Defendant No. 2) injured plaintiff, then a fifth grader. Settled at $100,000, the limit of defendant's liability insurance, this claim was *dismissed* with *prejudice*.

Defendant No. 1 then dismissed his cross-claim against Dr. Ernest Tarrasch (Defendant No. 3 and relator here) by which he sought apportionment of relative fault and contribution.

Defendant No. 2, Carl Durremann, a schoolmate also riding the bus, is alleged to have negligently thrown a ruler, striking and injuring plaintiff's eye. Durremann filed a cross-claim against Dr. Tarrasch and McVay, seeking indemnification or a determination of relative fault and apportionment of plaintiff's damages among them. The viability of this cross-claim is the subject of Dr. Tarrasch's petition for prohibition.

Dr. Ernest Tarrasch (Defendant No. 3), who treated plaintiff's eye following the injury, is charged with medical malpractice, allegedly resulting in plaintiff's loss of sight in both eyes. Settling with Defendant No. 3, on payment of $50,000, plaintiff executed his release, discharging any claim arising out of the incident of May 29, 1969, and *dismissed his action against Defendant No. 3*, leaving, as plaintiff's only remaining claim, that against Defendant No. 2. Defendant No. 3 then moved for summary judgment on Defendant No. 2's cross-claim filed against him. The trial court's stated intention to deny the motion led to this proceeding in prohibition.

I submit that our preliminary rule should be made absolute, prohibiting respondent, the trial judge, from denying Defendant No. 3's motion for summary judgment, and directing that judgment be entered against Defendant No. 2 on his cross-claim.

It should be noted that Defendant No. 2's cross-claim against Defendant No. 1 for apportionment of plaintiff's damages between them, under the principles of relative fault enunciated in *Missouri Pacific Railroad v. Whitehead & Kales*, 566 S.W.2d 466 (Mo. banc 1978), is not before us. If it were, plaintiff's release to Defendant No. 1, on payment of the $100,000 would, in my view, have been sufficient not only to require dismissal of plaintiff's claim against De-

fendant No. 1, but also to defeat such cross-claim. As stated in *Parks v. Union Carbide Corp.*, 602 S.W.2d 188, 189 (Mo. banc 1980), "[*Whitehead & Kales*] did not change the right of a plaintiff to settle with one or more joint tortfeasors as provided in § 537.-060, RSMo 1978 . . . " Similarly, the release to Dr. Tarrasch, in consideration of his $50,-000 payment, supports dismissal, or if you will, the extinguishment of plaintiff's claim against him, and also sustains summary judgment for Dr. Tarrasch on Defendant No. 2's cross-claim for indemnity on the basis of relative fault.

The sole foundation for the cross-claim against Dr. Tarrasch lies in the possibility that plaintiff might obtain judgment against Defendant No. 2 for damages flowing from the alleged malpractice of the doctor. While a tortfeasor, such as Defendant No. 2, is exposed to liability for (1) original injuries proximately resulting from his negligence, as well as (2) injuries or aggravation of original injuries caused by medical malpractice, plaintiff's claim for damages springing from the latter, i. e. the medical malpractice, is extinguished by his release and dismissal of the claim with prejudice for such malpractice. Accordingly, Defendant No. 2's exposure to liability and his *derivative* claim for damages for Defendant No. 3's alleged malpractice are concluded because the claim's source, that from which it is *derived*, no longer exists. Rule 55.32(b).

When a plaintiff elects the safe course of settlement, he will not be permitted to again assert the claim settled nor recover for amounts compensated. Though plaintiff may continue his action against Defendant No. 2, he may only pursue the claim for original injuries which was not otherwise legally terminated. That portion of his claim against Defendant No. 2 for damages stemming from the doctor's alleged malpractice terminated when plaintiff released this claim against the doctor. Accordingly, Defendant No. 2's cross-claim for indemnification for something he will

never be called upon to pay should also be called to a halt.

For these reasons I respectfully dissent.